# Ellison v. Moses.

*Bill in Equity by Creditors, to have several Conveyances by Insolvent Debtors declared parts of General Assignment.*

1. *Conveyances by insolvent debtor, as parts of general assignment* — An insolvent debtor having, under repeated decisions of this court, the right to sell and convey property in absolute payment of an existing debt, provided the price is fair and reasonable, and no use or benefit is reserved to himself, such absolute sale and conveyance will not, at the instance of other creditors, be declared and treated as part of a general assignment executed soon afterwards (Code, § 1737), though executed in anticipation of it, and with notice on the part of the creditor that the debtor intended to make a general assignment.

2. *Same* — A mortgage executed by an insolvent partnership to one of its members, to secure a debt for money loaned, which was in his hands as receiver in a chancery cause, with instructions to lend it out on mortgage of real estate, and whichhe allowed the firm to use without security, under the agreement or understanding, express or implied, that they would secure it by mortgage, will be declared and treated as part of a general assignment executed by the firm on the same day.

| 95 | 221 |
| 99 | 74 |
| 99 | 501 |

| 95 | 221 |
| 102 | 442 |

| 95 | 221 |
| 104 | 302 |

| 95 | 221 |
| 106 | 471 |

| 95 | 221 |
| 112 | 571 |
| 113 | 444 |

| 95 | 221 |
| 116 | 132 |
| 119 | 196 |
| 119 | 209 |

| 95 | 221 |
| 122 | 468 |

| 95 | 221 |
| 124 | 592 |

| 95 | 221 |
| 139 | 264 |

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 6th July, 1891, by Henry S. Ellison and others, as creditors of Moses Brothers, a partnership lately doing business in Montgomery as bankers, against the partners composing said firm, and against M. P. LeGrand and others; and sought to have several conveyances which Moses Brothers had executed to said LeGrand, M. P. LeGrand, Jr., Josiah Morris & Co., and H. C. Moses, declared parts of a general assignment which said firm had executed on the 6th July, 1891, conveying their property to trustees for the equal benefit of their creditors. The bill described these several conveyances, and they are described with sufficient particularity in the opinion of the court; but copies of them were not made exhibits. An amended bill was afterwards filed, which alleged the resignation of H. C. Moses as receiver in the chancery cause, and the appointment of Robert Goldthwaite as receiver in his stead, and asked that said Goldthwaite be made a defendant to the bill; and a copy of the mortgage to said H. C. Moses was made an exhibit to the amended bill. Each of said defendants filed a demurrer to

the bill, and a motion to dismiss it for want of equity; and Robert Goldthwaite also filed a plea in bar, as follows: "That said H. C. Moses was appointed receiver of funds in litigation in the cause of *Paul v. Knox*, pending in this court, and said sum secured to him by said mortgage was part and parcel of said funds; that this court directed that said Moses should loan said funds to borrowers upon the security of real-estate mortgages, and said Moses held said funds for that purpose and no other; that said Moses Brothers received and used said sum so secured by said mortgage with full notice of the character of said funds and the directions of the court respecting the same, and with the intent and purpose on their part to comply with said directions, and to execute a proper mortgage on real estate for the security of said funds; that said receiver permitted and allowed the use of said funds by his firm, and parted with the control of said money, only upon the understanding that the repayment thereof should be secured by a proper mortgage on real estate, but said firm neglected to make said mortgage until the date of said mortgage of which said exhibit is a copy; and this respondent avers that the consideration of said mortgage was the passing of said money at the time it was loaned to said firm, and their acceptance of it from said receiver, with the intent on his part to require, and on the part of said firm to give, proper real-estate security therefor, and notice of the requirements of the court respecting said funds, all of which raised an implied agreement on their part, if there was no express agreement, to execute a mortgage to secure said fund; and that said mortgage was executed to carry out said obligation so resting on said firm, and is nothing more than said firm was under legal obligation to do, and is not obnoxious to the law regulating general assignments."

The chancellor sustained the demurrers and the plea, and his decree is here assigned as error by complainants.

WATTS & SON, for appellants.—(1.) The right of an embarrassed or insolvent debtor to prefer one or more of his creditors, by a conveyance of property at its fair value, in payment of antecedent debts, is recognized and admitted; but, when these conveyances are executed with the intention on his part to make a general assignment for the benefit of his creditors, and with knowledge of that intention on the part of the creditors so secured or preferred, a different question is presented. Such conveyances are to be construed as if they had been embodied in the general assign-

[Ellison v. Moses.]

ment—are parts of one and the same transaction, and the law pronounces the preference unlawful. Courts of equity look to the substance, and disregard mere devices, or matters of form.—*Holt v. Bancroft*, 30 Ala. 199; *Preston v. Spaulding*, 120 Ill. 208; *Wilks v. Walker*, 22 So. Car. 108; 66 Wisc. 227; 57 Pa. 193; 2 Serg. & R. 326; 8 Rob. La. 267, 415; *Kellogg v. Richardson*, 19 Fed. Rep. 70; *Martin v. Hausman*, 14 *Ib.* 160; *Krebs v. Ewing*, 22 *Ib.* 693; *Freund v. Yagerman*, 26 *Ib.* 812; *Perry v. Corley*, 21 *Ib.* 737. (2.) The conveyance or transfer to M. P. LeGrand, Jr., as trustee, was not made in payment of any debt which Moses Brothers owed him, but for the benefit of certain creditors whom they desired to secure or prefer; and whether he divided the property among them equally, or sold it and divided the proceeds, it is equally an unlawful preference. Moreover, the creditors' acceptance of it in full satisfaction of their debts is not averred, and is not to be presumed. (3.) The mortgage to H. C. Moses as receiver comes within the very terms of the statute, and the facts averred in the plea do not take it out of the operation of the statute. If there was an express promise to give a mortgage as security, the promise was void under the statute of frauds, unless reduced to writing; and it was void for uncertainty and indefiniteness, because no particular property was specified, and a court of equity could not have enforced it. As an implied promise, it stands on no higher ground than other unsecured debts. Besides, the statute contains an express exception of mortgages given to secure a debt contemporaneously created, and this court can not add other exceptions by implication or construction.

SEMPLE & GUNTER, and TOMPKINS & TROY, *contra.*—(1.) It has been repeatedly decided by this court that the statute relating to general assignments does not embrace conveyances of the absolute title in payment of debts, but such conveyances are governed by the rules which apply to conveyances or transfers of property by an insolvent debtor in payment of antecedent debts.—*Crawford v. Kirksey*, 55 Ala. 282; *Holt v. Bancroft*, 30 Ala. 204; *Stiles v. Lightfoot*, 26 Ala. 445; 29 Ala. 713; *Hodges v. Coleman*, 76 Ala. 203. The statute has been carried into two revisions of the public statutes since the earliest of these decisions was made, and this is a legislative adoption of that construction.—3 Brick. Digest, 749, § 1. (2.) Moses Brothers received the trust funds which were in the hands of H. C. Moses as receiver, not only with knowledge of the fact that they were trust

'funds, but with knowledge of the instructions to him as to their investment; and if they did not make an express promise to make a proper mortgage, the law imputes such promise to them and its acceptance.—*Ex parte Ford*, 16 Q. B. D. 307; *Ogden v. Saunders*, 13 Wheat. 341; *Curtis v. Fielder*, 2 Black, 478; *Cary v. Curtis*, 3 How. 247-55; 12 Wall. 12; 13 Wall. 630; 3 Pom. Equity, § 1238. When the mortgage was executed, it related back to the time when the obligation was incurred.—78 N. Y. 131; 94 N. Y. 340; 9 Ch. Ap. 752. It makes no difference if the promise was not in writing, since no one but a party can plead the statute of frauds, and the statute does not apply to executed contracts.—51 Ala. 434; 60 Ala. 214; 71 Ala. 202.

WALKER, J.—On July 6th, 1891, Moses Brothers made a general assignment of all their property for the benefit of their creditors. On the same day they conveyed to M. P. LeGrand certain property in payment of an antecedent debt due to him; to M. P. LeGrand, Jr., as trustee, certain other property in payment of an antecedent debt due to him; and executed to Henry C. Moses, as receiver in a cause pending in the Chancery Court, a mortgage on certain other property to secure a sum of ·money due to him as receiver. On the preceding 26th day of June they had conveyed certain other property to M. P. LeGrand, in payment of another antecedent debt then due to him; and on the 4th day of July they had transferred and delivered certain other property to Josiah Morris & Co., in payment of an antecedent debt then due to them. It is charged that the several conveyances giving preference in the payment of the debts respectively provided for were executed when Moses Brothers were utterly insolvent, and in contemplation of the general assignment; and that when the preferences were made, the several preferred creditors above mentioned well knew of the insolvency of Moses Brothers, and of their intention to make an assignment. The purpose of the bill is to have all the conveyances and transfers above mentioned declared and treated as parts of one general assignment for the benefit of all the creditors of Moses Brothers, and to avoid the preferences.

The law of this State permits an insolvent debtor to make preferences among his creditors in the payment of his debts, by an absolute sale or transfer of his property in discharge of such debts. He may convey the whole or any part of his property in payment of an antecedent debt; and if the price is reasonably fair, and there is no reservation of a

benefit or trust in his favor, the sale is valid and will be sustained, whatever may have been the debtor's intentions, and though the preferred creditor knew of such intentions, and that the sale would leave the debtor unable to pay his other debts. That such preferences are allowable is settled by numerous decisions of this court.—*Chipman v. Stern*, 89 Ala. 207; *Hodges v. Coleman*, 76 Ala. 203; *Crawford v. Kirksey*, 55 Ala. 282; 3 Brick. Dig. 517. The statutory prohibition against preferences in general assignments (Code, § 1737) does not operate upon an absolute and unconditional sale of a debtor's property to his creditors in payment of the debts due to them. This question, also, is well settled by the former decisions of this court. The general assignment, in which preferences or priorities of payment given to one or more creditors over the others are prohibited, implies the idea of a *trust*, under the operation of which there is a possibility of a reversion to the debtor of some interest in the proceeds of a sale of the property assigned. No such idea is involved in an unconditional sale of property in absolute payment and discharge of a debt. Here the debt is extinguished, and the debtor is stripped of all interest in the property sold. Such a sale is not within the purview of the statute, and if a preference is thereby effected, it is not such a preference as the statute prohibits.—*Otis v. Mc-Guire*, 76 Ala. 295; *Danner v. Brewer*, 69 Ala. 191; *Comer v. Constantine*, 86 Ala. 492. The result is, that the law as it now stands permits an insolvent debtor to prefer one or more of his creditors over the others in the payment of debts by a sale of property in satisfaction thereof; and prohibits preferences or priorities of payment in a general assignment by the debtor for the benefit of his creditors. Only the legislature can make the prohibition against preferences equally operative in both classes of cases. The courts must recognize and enforce the law as it exists. They can not ignore distinctions created by the law-making power.

It is not shown by the bill that any of the conveyances and transfers made by Moses Brothers in payment and discharge of certain of their debts had the features or characteristics of an assignment for the benefit of creditors, as distinguished from an absolute sale. If all the property of the debtors had been exhausted in the payment of the preferred debts, the creditors who were left wholly unprovided for would not have been entitled to disturb the sales merely because the preferences were thereby made. The validity of the sales was not affected by the circumstance that some other property was left to the debtors which they conveyed

by a general assignment for the benefit of their remaining creditors. The complainants were not entitled to have the absolute sales and conveyances treated as parts of the general assignment. The decree of the Chancery Court to this effect was correct.

The conveyance to Henry C. Moses, the receiver appointed by the Chancery Court in the case of *Paull v. Knox*, does not purport to be in satisfaction and discharge of a debt due to him as receiver; nor does it purport to come within the exception to the statute in reference to "mortgages given to secure a debt contracted contemporaneously with the execution of the mortgage, and for the security of which the mortgage was given."—Code, § 1737. It is a mortgage executed to secure the repayment of the amount of certain trust funds which had come to the hands of Henry C. Moses as receiver, subject to the directions of the court to lend the same upon the security of real estate mortgages. He allowed the firm of Moses Brothers, of which he was a member, to use these funds, without furnishing the security upon which he was authorized to lend them. It does not appear how long they had had the use of these funds before the mortgage in question was executed. The plea on the subject does not allege that, at the time the funds were appropriated and used by the firm, there was any express agreement on their part to give the proper real estate security for the repayment thereof. The averments of the plea show no more than that the receiver's permission of the use of the funds by his firm, and their acceptance of them with notice of the requirements of the court in reference thereto, raised an implied agreement on their part to give the proper real estate security; and that the execution of the mortgage by Moses Brothers, after they had received and used the funds, was merely the performance of the duty imposed upon them in the premises.

The mortgage in question and the instrument which is a general assignment on its face were executed on the same day, and the bill alleges that they were parts of one and the same transaction. The property conveyed by the mortgage is, by the terms thereof, redeemable on the payment of the debt thereby secured—by the express terms of the instrument a trust results to the debtors, of any surplus which may remain after satisfying the debt. It was merely a provision for payment by the appropriation of certain property, or the proceeds of the sale thereof, to that end, and not a payment itself. These are distinguishing characteristics of the transfer in which preferences are avoided by the statute, if

substantially all of the debtor's property is covered thereby; and though the mortgage, if standing by itself, would be regarded as only a partial assignment, and not within the operation of the statute; yet, if when it was executed, other and successive transfers or conveyances of a kindred nature were contemplated, covering all the debtors' property, the several conveyances, when executed, must be taken together as forming a *general* assignment, upon which the statute operates, unless, by reason of some special feature or circumstance, the mortgage is withdrawn from the influence of the statute.—*Danner v. Brewer*, 69 Ala. 191; *Holt v. Bancroft*, 30 Ala. 93; 3 Brick. Dig., pp. 49, 50.

What was the character of the liability incurred by Moses Brothers by their appropriation and use of the funds entrusted to the receiver, without furnishing him the security which, by the order of the court, he was required to take upon a loan of the money? Is there anything in the mortgage subsequently executed as security for the liability thus incurred to exempt it from the operation of the statute prohibiting preferences or priorities in general assignments? It is clear that the receiver, in permitting and allowing the use of the trust funds by his firm, and in parting with the control thereof, without requiring the execution of a mortgage or mortgages on real estate to secure the loan, as directed by the order of the court, was guilty of a conversion, which imposed a personal liability upon him and upon his firm, who received the money with notice of the breach of trust.—*DeJarnette v. DeJarnette*, 41 Ala. 708; *Henderson v. Henderson*, 58 Ala. 582; *Malone v. Kelly*, 54 Ala. 549. It is equally clear that the trust funds could be followed into the hands of any one who received them charged with notice of the trust, or into any unauthorized investment of them by the trustee, to which they could be traced.—*Reed v. Bank of Mobile*, 70 Ala. 199; *Whaley v. Whaley*, 71 Ala. 159; 3 Brick. Dig., p. 796. Here, there is no question of tracing and identifying the funds in the hands of Moses Brothers. There is no pretense that they had invested them in the property upon which the mortgage was given. They had simply converted the money, mingled it with their own funds, and used it in some way which is not disclosed. The consideration of the mortgage was the personal liability incurred by the unauthorized use of the trust funds. Moses Brothers having used the funds with notice of their trust character, and of the directions of the court as to the mode of their investment, their liability was similar to that incurred by the trustee himself by his breach of trust. In

reference to the liability in such case of the trustee to the
*cestui que trust*, it was said in *Lathrop v. Bampton*, 31 Cal. 23:
"Where a trustee, in violation of his trust, invests the trust
property or its proceeds in any other property, the *cestui
que trust* may elect to hold the substituted property subject
to the trust, or to hold the trustee personally liable to him
for the breach of the trust. The former he can do, however,
only when he can follow and identify the property, either in
its original or substituted form. . . . If this can not be done,
the right of the *cestui que trust* to elect is gone, because its
exercise has become impossible, and he is therefore forced
to rely upon the personal liability of the trustee. . . .
When thus forced to rely upon the personal liability of the
trustee, a *cestui que trust* occupies a position towards the
estate of the trustee which is no better, but is identical with,
that of a simple-contract creditor. He has no special lien
upon the general estate of the trustee which is superior to
that of any other creditor; for the specific property covered
by the trust is gone, and nothing is left to the *cestui que
trust* except a naked claim for damages generally, on account
of the breach, to be obtained through an action at law,
attended by all the incidents of a like action on behalf of
one who is not the beneficiary of a trust." What was there
said is in harmony with the former decisions of this court.
The rule is well settled, that the *cestui que trust* is entitled
to have the trust visited upon any property into which the
trust funds have been invested by the trustee in breach of
his duty, or by any third person with notice of the trust, so
long as such funds can be satisfactorily traced and identified.
But, in case of a mere money trust, when the money has
been mingled with the funds of the trustee, or of another
person, so that it can not be distinguished and identified,
and can not be traced into any particular property, there is
no longer any specific thing upon which the trust may attach ;
and, in such case, nothing is left to the *cestui que trust* but
the moneyed liability in his favor of the trustee, or of the
third person who has used the fund with notice of its trust
character; and such liability stands upon the same footing
as a mere debt, and the *cestui que trust* has no advantage
over a general creditor.—*Parker v. Jones*, 67 Ala. 234; *Gold-
smith v. Stetson*, 30 Ala. 164; *Stewart v. Fry*, 3 Ala. 573 ;
*Maury v. Mason*, 8 Porter, 211. Indeed, the trustee's per-
sonal liability to make compensation for the loss occasioned
by a breach of trust, is a simple-contract equitable debt.
*Vernon v. Vaudry*, 2 Atk. 119; *Benbury v. Benbury*, 2 Dev. &

[Ellison v. Moses.]

Bat. Eq. (N. C.) 235; 2 Pomeroy's Eq. Jur. § 1080 ; 2 Lewin on Trusts (Flint's ed.), *906.

It may be conceded that a promise by Moses Brothers to give a mortgage on real estate, to secure the amount of the trust funds which came to their hands and was converted by them, may be implied from their acceptance and use of the funds, with notice of the direction of the court that such security should be taken by the receiver upon a loan of the funds by him. There is, however, nothing upon which to raise an implication of an agreement by Moses Brothers to give a mortgage upon all their real estate, or upon any particular real estate. If they had entered into a written agreement to give a mortgage on certain land, this would have fixed an equitable lien thereon, and the giving of the mortgage could have been regarded as the performance of an executory agreement to furnish that specific security. 2 Pomeroy's Eq. Juris. § 1237 ; *Kirksey v. Means,* 42 Ala. 426 ; *Mobile & C. P. R. Co. v. Talman,* 15 Ala. 472. Upon such a state of facts, liens which, otherwise, would have been invalid, were sustained in several cases, which were referred to in the argument for the appellees.—*Paulding v. Chrome Steel Co.,* 94 N. Y. 334; *Castle v. Lewis,* 78 N. Y. 131. In the absence, however, of any agreement to secure the repayment of trust money by a lien or charge upon property which can be identified, if the money has been received and dissipated, or so mingled with other funds that it can no longer be distinguished, then no particular property can be arbitrarily selected and treated as the trust estate in a substituted form. The mere personal obligation of the debtor to repay the money, or to secure its repayment by a lien upon property not identified, can not operate to fix a lien upon any specific property, or to stamp upon the legal title thereto the qualities of a trust, so as to give the *cestui que trust* an equitable interest therein, or claim thereon. In such case, there is no specific property as to which the *cestui que trust* can be regarded as the equitable owner, or as the beneficiary of an equitable lien or charge. His available claim is narrowed to a mere debt, and he has only such right to reach and subject the debtor's property as any other general creditor has. Upon no part of the debtor's property is there a special charge for the payment or security of the personal claim against him, growing out of the breach of trust. In the present case, when the receiver surrendered the control of the trust money, and permitted it to be mingled with the funds of his firm, the only recourse left to him for indemnity by the firm was the

personal liability incurred by their participation in the breach of trust. The debtor firm had no more right to provide for a perference or priority of payment of such claim in a general assignment of their property, than they had to provide for such preference or priority of payment in favor of any other one or more creditors over their remaining creditors.

Under the averments of the bill as amended, the mortgage to Henry C. Moses, receiver, and the instrument which is a *general* assignment on its face, must be taken together as constituting one transaction, by which provision was made for the payment of the debts of the grantors, but which did not by itself effect a payment and discharge of such debts—in other words, the transaction was a general assignment. And as the mortgage undertakes to give a preference or priority of payment of the debt therein provided for, the other creditors are entitled to have that attempted preference avoided, and to have the security of the mortgage enure to the benefit of all the creditors of the grantors alike.

The Chancery Court erred in sustaining the plea of Robert Goldthwaite as the receiver appointed to succeed Henry C. Moses. Because of that error the decree must be reversed. The costs of the appeal in this court and in the Chancery Court to be paid, one half by the appellants, and one half by the appellee Goldthwaite as receiver.

Reversed and remanded.

THORINGTON, J., not sitting.