# Bell v. Goetter, Weil & Co.

*Bill in Equity to have a Confession of Judgment declared a General Assignment.*

1. *General assignments; their nature and how affected by statute.*—The statute amending section 1737 of the Code (Acts of 1892-93, p. 1046), providing that certain conveyances by a debtor by which preference or priority of payment of a debt is given shall inure to the benefit of all the creditors of the grantor, does not abrogate but circumscribes the common law right of a debtor to prefer creditors, its provisions being limited to conveyances or transfers by which the debtor divests himself of all title to his property and passes it to a trustee for the benefit of some to the exclusion of other creditors, or directly to one or more creditors to the exclusion of others ; and a general assignment within the meaning and operation of said statute is where a debtor voluntarily transfers all or substantially all of his property, subject to the payment of his debts, for the security of one or more of his creditors in preference to others, the essential element of which transfer is the mutual agreement of the parties, and the rights arising therefrom are purely contractual in their nature as distinguished from rights created by law.

2. *Lien of judgment; bears no legal relation to a general assignment.*—The lien which the law attaches to a judgment, without regard to the manner it may be obtained, has in it no element of contract and confers no right of property—creates no *jus in re*—but only confers a right to levy on property to the exclusion of other adverse interests acquired subsequent to the judgment, and to effectuate the lien by following the steps of the law which lead to the consummation of the creditor's right under the judgment by sale of property under the levy of the execution issued thereon, and the application of the proceeds of sale to the liquidation of his debts against the debtor ; and

[Bell v. Geotter, Weil & Co.]

such lien bears no legal relation to, and has neither the nature nor operation of, a general assignment.

3. *General assignment; confession of judgment, not within provision of statute making general assignment inure to benefit of all debtor's creditors.* A judgment confessed by a debtor in failing circumstances, which, when properly recorded in the office of the judge of probate of the several counties in which property of the debtor is situate, becomes a lien on all the property of the debtor subject to levy and execution, is in no sense a general assignment and can not be construed to be within the meaning and operation of the statute amendatory of section 1737 of the Code (Acts of 1892-93, p. 1046), which provides that every general assignment or conveyance by a debtor of all or substantially all of his property in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors over other creditors, shall inure to the equal benefit of all the creditors of the debtor.

APPEAL from the Chancery Court of Montgomery.
Heard before the Hon. JERE N. WILLIAMS.

The bill in this case was filed on October 20, 1894, by Goetter, Weil & Company, and many other creditors of Willis V. Bell, against the said Willis V. Bell, Newton J. Bell, Marks & Gayle and Lehman, Durr & Co.

The bill as amended, shows the following state of facts : That on the 10th of October, 1894, and for some time prior thereto, W. V. Bell was indebted to the various complainants in various sums of money, aggregating about ten thousand dollars. That on that day his brother, N. J. Bell procured from the clerk of the city court of Montgomery, which was then in session, a summons signed by the clerk, and on the 15th of October, 1894, that summons was returned and filed with the clerk. When so returned and filed, it was filled out, and was a summons requiring W. V. Bell to appear at the then next term of the court, to answer the complaint of N. J. Bell, and was accompanied by a complaint in which N. J. Bell claimed of W. V. Bell twenty-five thousand dollars upon a note made in 1893, and had upon it the following endorsement : "I hereby accept service of the within summons and complaint, and waive service of the copy thereof by the sheriff, and I waive the time allowed by law for hearing the case, and consent that the same may be tried without delay. [Signed.] W. V. Bell. Attest. W. R. Houghton."

On the day on which this complaint was filed, the case

was called for trial, and without the intervention of a
jury, a judgment was entered by the court against W.
V. Bell and in favor of N. J. Bell for twenty-two thou-
sand, seven hundred and sixty-five dollars and forty
cents, being the amount of the balance due on the note
sued on, with what was ascertained by the court to be
reasonable attorneys' fees; the note containing a stipula-
tion to pay such fees. Immediately upon obtaining the
judgment, N. J. Bell procured from the clerk certificates
thereof and caused the same to be filed in the office of
the judges of probate in Montgomery, Crenshaw and
Chilton counties, Alabama, thereby endeavoring to obtain
a lien upon all of W. V. Bell's property in those coun-
ties. It is further averred that W. V. Bell owned very
little property in Crenshaw and Chilton counties, and
"that the property, upon which a lien is fastened by the
filing and recording of said judgment, is all of the visi-
ble property owned by said Bell, and that is all that can
be reached by execution, and is substantially all of the
property of the said Willis V. Bell." The bill then avers
that it was agreed between W. V. Bell and N. J. Bell
before the summons was procured, that all of these things
should be done to enable N. J. Bell to acquire a prior
lien on all of the property of W. V. Bell, and to secure
him payment of his debt in preference to complainants.
It is then averred that W. V. Bell owned lands and per-
sonal property, including cotton on his plantations and
in the warehouses, and other crops, upon all of which
a lien was fastened by the recovery of said judgment, and
by the filing of the same; that the intent of said N. J.
Bell in obtaining and recording said judgment was to ac-
quire for, and of the said W. V. Bell in consenting there-
to was to give to, such judgment a prior lien on all of
the property of W. V. Bell. This claim was denied by
complainants, and it was averred that the attempted
preference was contrary to law, and that the recording of
the instruments created a lien inuring to the benefit of
all the creditors. It was then averred that W. V. Bell
owed other debts besides those due complainants,
amounting to ten thousand dollars; that N. J. Bell de-
nied the right of complainants to share in the distribu-
tion of such property, and asserted that his lien thereon
was prior to that of other creditors; that his lien gave
him no title to the property, and no right to its posses-

[Bell v. Goetter, Weil & Co.]

sion, and that he was, therefore, incompetent and incapable of administering the trust, and that it was necessary to appoint a receiver to do so.

The prayer of the bill was as follows : "That a receiver may be appointed of the property of the said Willis V. Bell, upon which a lien was fastened by the filing and recording of the said judgment, and that the said receiver be authorized and required to convert the said property into money and hold the same subject to the further orders of this court. And upon the hearing, the complainants pray your honor to decree that the attempt of the said Newton J. Bell to obtain the preference or priority of payment out of the property of the said Willis V. by obtaining the said judgment and by filing the certificate thereof in the court of probate, is null and void ; and that the lien acquired by the said judgment by the filing and recording of the certificate thereof, be held to inure to the benefit of complainant and all the other creditors of the said Willis V. Bell. And complainants further pray your honor to make a decree, requiring all the creditors of the said Willis V. Bell, including the said Newton J. Bell, to propound their claims against the said Willis V. Bell in this honorable court, and that upon ascertaining the amount thereof, that the fund derived from the sale of said property be distributed among all of the said creditors *pro rata*."

In response to the bill, the respondent, N. J. Bell, filed his affidavit in which he denied that there was any collusion or fraud between him and Willis V. Bell as to the obtaining of judgment, or that there was any intention on the part of either of them to obtain such judgment as a preference over other creditors of said W. V. Bell, or with an intention to hinder, delay or defraud such creditors ; that the judgment recovered was for an amount justly due the said N. J. Bell. The said N. J. Bell, in his affidavit, also denied the necessity for the appointment of a receiver of the property of W. V. Bell, stating in said affidavit that he, N. J. Bell, was, in every respect, solvent, and also stating in detail the several claims against W. V. Bell, which were owned by him, and the manner in which they were acquired. The respondents also made a motion to dismiss the bill for the want of equity.

Upon the hearing of the cause in vacation on the mo-

[Bell v. Goetter, Weil & Co.]

tion for the appointment of a receiver, and on the motion to dismiss the bill for the want of equity, a decree was rendered overruling the motion to dismiss the bill for the want of equity, and sustaining the motion for the appointment of a receiver, and ordering such appointment. The respondents appeal from this decree, and assign the same as error.

HOUGHTON & COLLIER and THORINGTON & CHILTON, for appellants.—1. Only an instrument that can operate as a transfer of property can be declared a general assignment, and it must be the voluntary act of the debtor as distinguished from the act of law.—*Perry Ins. & Trust Co. v. Foster*, 58 Ala. 502; *Otis v. McGuire*, 76 Ala. 295.

2. A confessed judgment can not, of itself, operate as a general assignment within the meaning of the statute.—*Stein v. Varrelmunk*, 12 Law. Rep. Ann. 808; *Farwell v. Wilson*, 35 Ill. App. 164; *Young v. Clapp*, (Ill.) 32 N. E. Rep. 187; *Heir v. Kaufman*, 134 Ill. 215; *Seigel v. Chidsey*, 70 Am. Dec. 124; *Farwell v. Nilson*, 133 Ill. 45; *Witmer's Appeal*, 45 Pa. St. 462; *Bayley v. Bryant*, 24 Pick. 198; *Baird v. Williams*, 19 Pick. 391; *Landaus v. Victor*, 69 Wis. 434.

3. It is only where a confessed judgment is part of a general purpose to execute a general assignment that it can be treated as part of an assignment. In that case the judgment being part of the one scheme or transaction, the general assignment draws the judgment to it and the statute destroys the preference. It is the fact of a general assignment being in contemplation at the time the judgment is suffered, and as part of the one purpose to dispose of all the debtor's property, that brings the judgment into the assignment as part thereof. *Stein v. Levy*, 55 Hun. (N. Y.) 381, 385; *Rochester v. Armour*, 92 Ala. 432.

TOMPKINS & TROY, *contra.*—The confession of judgment in this case operates as a general assignment under the statute. It is true, it was not a conveyance of the property of W. V. Bell; but it was the creation of a lien upon all of that property, and its effect was to give to N. J. Bell a preference or priority of payment over the remaining creditors of W. V. Bell, and that preference or priority was not limited to a right to sell a part

of the debtor's property, and apply the proceeds to the payment of this debt, but it gave the right to sell it all, and so apply such proceeds. It was an appropriation, not of a part of such property as a security of such debt, and, therefore, partial; but it was an appropriation of all such property to such purpose, and it was, therefore, general. The word general, as used in the statute, does not define or refer to the form of the instrument by which the preference is given, but it refers to the property appropriated in the preference. If only a part of the debtor's property is appropriated, then it is partial; if substantially all of his property is appropriated, then it is general. What the statute denounces is the doing of an act by a debtor by which he gives to one creditor a preference or priority of payment out of substantially all of his property, over the remaining creditors; and the form of the instrument or act giving it is material. The thing condemned is the creation of the preference or priority.—*Danner v. Brewer*, 69 Ala. 191, 199; *Rochester v. Armour*, 92 Ala. 432; 3 Brickell Dig. 50–51, §§ 16–19; *White v. Cotshausen*, 12 U. S. 329; *Freud v. Yaegerman*, 29 Fed. Rep. 812; *Wis. M. & F. Bank v. L. & F. Coal Co.*, 64 Fed. Rep. 497.

2. The statute is one of that class which is to be liberally construed to advance the object of its enactment. This has been the settled policy of this court in its construction. The words "general assignment" had a well understood, a technical meaning, at the time the statute was enacted. It was well understood to mean a conveyance by the debtor of all his property to some person in trust to apply the same, or its proceeds, to the payment of some, or of all, his debts and to return the surplus to him—1 Am. & Eng. Encyc. of Law, p. 845, and note 4. It was the well settled common law, that, by such instruments, the debtor could give a preference to one or more of his creditors over the others. When our statute first came up for construction, it was insisted that the only preferences forbidden were those included in a technical general assignment, but that construction was repudiated by this court, and it was held, that a mortgage by a debtor of a part of his property to secure a debt, followed a few days thereafter by an assignment of the remainder, would be treated as a part of a general assignment, although it was not such an instrument.

*Holt v. Bancroft*, 30 Ala. 193. So it has been frequently held that a mortgage of all of a debtor's property to se-cure the payment of a portion, or one, of his creditors to the exclusion of others, although mortgages are in-struments very different in their character from assign-ments, would be a general assignment under the statute. *Warren v. Lee*, 32 Ala. 449 ; *DuBose v. Carlisle*, 51 Ala. 449. These authorities were followed to their legitimate conclusion, when, it was held in *Rochester v. Armour*, 92 Ala. 432, that a confessed judgment followed by an assignment would be treated as a part of the assignment. These cases are all based on the well settled rule of construction, that in deter-mining the meaning of a statute, the courts must look to the evil intended to be remedied, and must give to the statute, such a construction as will suppress the mis-chief and advance the remedy, and as will suppress subtle inventions and evasions for the continuance of the mischief.—*Huffman v. The State*, 29 Ala. 40 ; *Blake-ney v. Blakeney*, 6 Port. 109 ; *Sprowl v. Lawrence*, 33 Ala. 647.

3. Here the confessed judgment is an appropriation of all the debtor's property as a security for the pre-ferred debt. If the judgment created a lien on only part of the property, and was followed by an assign-ment of the remainder, then, it would be a general as-signment, as a mortgage of a part, followed by an as-signment of the remainder would be a general as-signment. A lien, which in itself covers all of the deb-tor's property, created by an act of the debtor, is a gen-eral appropriation of that property as a security for that particular debt, just as a mortgage of all of his property would be, and must inure to the benefit of all the debtor's creditors. The idea that the instrument or act, operating as a general assignment, must convey some title is entirely indefensible. Suppose A. indebted to B. should execute an instrument in writing, reciting the in-debtedness and his desire to secure him, and then should declare for that purpose, "I hereby give to said B. a lien on all of my property, real and personal." That would not convey to B. any title, but would merely give him the right to have that property sold and its proceeds ap-plied to the payment of the debt.—*Cole v. Smith*, 24 W. Va. 287 ; 1 Jones on Liens, § 93. No one would con-

tend that that was not within the statute. What W. V.
Bell did was in effect the same thing. He created a lien
that could be enforced against his property even after
death in a court of equity—*Enslen v. Wheeler*, 98 Ala.
200.

BRICKELL, C. J.—The principal question of the
case, to state it most favorably to the appellees, is,
whether a judgment confessed by a debtor in failing
circumstances, which, when recorded in the office of the
judge of probate, becomes a lien on all the property,
real and personal, of the debtor within the county sub-
ject to execution, and which has been recorded in the
several counties in which the property of the debtor is
situate, is to be taken and deemed a general assignment
inuring to the equal benefit of all the creditors of the
debtor.

The statute as it now exists, and within the operation
of which it is insisted the judgment must be drawn,
reads : "Every general assignment made by a debtor, or
a conveyance by a debtor of substantially all of his prop-
erty in payment of a prior debt, by which a preference
or priority of payment is given to one or more
creditors over the remaining creditors of the grant-
or, shall be and inure to the benefit of all the credi-
tors of the grantor equally; but this section shall
not apply to or embrace mortgages given to secure a
debt contracted contemporaneously with the execution
of the mortgage, and for the security of which the mort-
gage was given."—Pamph. Acts, 1892-93, p. 1046. By
its own terms the statute is limited to conveyances, to
transfers, by which the debtor divests himself of title,
passes it to a trustee for the benefit of one or more credi-
tors, to the exclusion of all others, or directly to one or
more creditors in exclusion of all others. First, it is a
general assignment creating preferences which it is de-
clared shall inure to the equal benefit of all creditors.
A general assignment, within the meaning and opera-
tion of the statute, in view of the repeated decisions in
construction of it, since its original introduction into
our legislation by the Code of 1852, (Code of 1852, §
1556), is capable of a clear and precise definition. It is
a voluntary transfer by a debtor of all, or substantially
all, of his property subject to the payment of debts, for

the security of one or more creditors in preference to others. The expression *voluntary transfer*, is not of course employed in the sense in which it is frequently used, that of not being supported by a valuable consideration, but as expressive of the true character of the transfer, that it is the act and proceeds from the volition of the debtor. It is a transfer of substantially all of the property of the debtor subject to the payment of debts; for if it be not, it would be a partial, and not a general assignment, and not within the operation of the statute. Referring to the original statute, and in this respect it is unchanged, it was said in *Holt v. Bancroft*, 30 Ala. 193, the first case in which there was a construction of it: "The object of the statute was to prohibit all discriminations by a debtor, making a general assignment, in favor of any of his creditors. It does not aim to deny, and does not deny to a debtor the power of securing a creditor's debt by a conveyance of a part of his property. The right of preferring creditors by partial assignments is untouched by the section of the Code quoted. It is not the preference of itself, but the preference as a feature of a general assignment, which the statute condemns. This construction of the statute is the only one which can be adopted, without extending its meaning beyond the natural import of the language." In that case, a trust deed for the security of a particular creditor, conveying a part of the debtor's property, was deemed a part of a subsequent general assignment. But the court said, if the trust deed had not been a component part of the general assignment, it would not have been affected by the statute. And upon this theory and construction of the statute all our decisions proceed—that it is directed only to preferences as a feature of a general assignment. If there is not a general assignment, until the clause was introduced as to conveyances in payment of prior debts, it has never been supposed there was any occasion or room for the operating of the statute. In the last case in construction of the statute, prior to its amendment, it is said: "The law of this State permits an insolvent debtor to make preferences among his creditors in the payment of his debts, by an absolute sale or transfer of his property in discharge of such debts. * * * * * The statutory prohibition against preferences in general assignments

does not operate upon an absolute and unconditional sale of a debtor's property to his creditors in payment of debts due to them. * * * * * Such a sale is not within the purview of the statute, and if a preference is thereby effected, it is not such a preference as the statute prohibits."—*Ellison v. Moses*, 95 Ala. 221. The office, scope and effect of the subsequent amendment of the statute, is to draw such sales or conveyances in payment of pre-existing debts within its operation, converting them like general assignments into a common security for the benefit of all creditors. Beyond this, the statute does not operate, and cannot operate without an expansion of its terms, which, in view of its history, would savor of judicial legislation. Assignments for the security of debts, or sales or conveyances in payment of debts, are contractual purely and simply; their essential element is the mutual agreement of the parties. The lien which the law attaches to a judgment without regard to the manner in which it may be obtained, has in it no element of contract, and confers no right of property; it creates no *jus in re*.—2 Freeman on Judgments, § 333. *In Conrad v. Atlantis Ins. Co.*, 1 Peters, 443, it was said by Judge Story: "Now, it is not understood that a general lien by judgment on land constitutes, *per se*, a right in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests, subsequent to the judgment; and when the levy is actually made on the same, the title of the creditor for this purpose relates back to the time of his judgment, so as to cut out intermediate incumbrances. But subject to this, the debtor has full power to sell, or otherwise dispose of the land. His title to it is not divested or transferred to the judgment creditor. It may be levied upon by any other creditor, who is entitled to hold it against every other person except such judgment creditor; and even against him, unless he consummates his title by a levy on the land, under his judgment. In that event, the prior levy is, as to him, void, and the creditor loses all right under it. The case stands, in this respect, precisely upon the same ground as any other defective levy or sale. The title to the land does not pass under it. In short, a judgment creditor has no *jus in re*, but a mere power to make his general lien effectual, by following up the steps of the

law, and consummating his judgment by an execution and levy on the land. * * * * The only remedy of the judgment creditor is against the thing itself, by making that a specific title which was before a general lien." We are induced to this extended quotation, because therein is embodied so clear and precise a definition of the lien of a judgment, and of its nature, operation and extent. It is apparent that the lien bears not the least resemblance to either a general assignment for the security of debts, or a sale or conveyance in the payment of debts, which alone fall within the operation of the statute.

In *Mobile Savings Bank v. Burke*, 94 Ala. 130, it is said : "The lien of a judgment is not the subject of, and has none of the properties of a contract. It is the creature of legislation, and may be taken away without impairing the obligation of contracts—a statutory lien." This is but a reaffirmation of a principle which has been of frequent assertion and application in this court—that the lien of a judgment, or execution, is derived from statute, and a repeal of the statute creating it destroys it, in the absence of an exception or clause preserving it. The exercise of the repealing power by the legislature is not an invasion of any constitutional prohibition or guaranty, State or Federal.—1 Brick. Dig., 900, § 144. A general assignment, or a sale or conveyance in payment of debts, is, each, a contract, within the prohibition and protection of the constitution, State and Federal. No subsequent legislation can destroy or impair the rights and interests they may create. The legislature pending this suit may take away the lien of the judgment, which is the feature supposed to convert it into a general assignment inuring to the common security of all creditors—then the judgment would cease to be a general assignment not by the act or by the assent of the parties, but by the declaration of the legislative will.

The statutes secure to the judgment debtor, the right to redeem lands which may be sold under execution issuing on the judgment ; and a like right is secured to judgment creditors. These are rights which are not to be taken away or impaired by judicial construction. Now suppose, by construction the judgment is converted into a general assignment, can these rights survive? A general assignment passes to the assignee an indefeasible

title; there remains in the assignor no right, or equity of redemption; there is no more remaining than the possibility of a reversion of so much of the property as may not be necessary for the payment of the preferred debts, or of any surplus of the proceeds of sales which may remain after satisfying the debts.—*Ellison v. Moses, supra.* The purchasers from the assignee take an indefeasible title to the lands; the title which resided in the assignee, without the incumbrance of the statutory right of redemption, whether it be the right of the assignor, or of his judgment creditor.—*Comer v. Constantine*, 86 Ala. 492. We know not any process of reasoning by which it is possible to convert the judgment from its real nature, character and operation, into a general assignment within the meaning of the statute. The two have no common elements or characteristics—they bear to each other no legal relation. The conversion would compel the divestiture of well defined legal rights; and the compulsory formation by the parties of legal relations, into which they have not entered, and did not contemplate entering.

We may concede, as is argued by counsel, that the purpose of the confession of the judgment was the preference of the judgment creditor to the exclusion of all other creditors; and that thereby the result is produced which the statute interdicts from being produced by a general assignment. This furnishes no reason for an expansion of the statute by the courts to cases to which the legislature has not extended it. The debtor by the common law has the right to prefer creditors; a right circumscribed only by the statutes and the principles of courts of equity directed against frauds upon creditors. When a statute does not abrogate, but simply limits or qualifies the right, it would be an infringement of the well settled principle of statutory construction, that statutes are not to be regarded as derogating from the principles of the common law, save so far as may be expressed or fairly implied, if the courts were to take up the limitation or qualification where the legislature leaves it, and widen it to meet those cases to which it may be supposed it ought to have been extended. Prior to the amendment of the statute, drawing conveyances or sales in payment of pre-existing debts within its operation, the like argument was frequently pressed upon the courts. The invariable answer was, that such sales or conveyances were

not within the legislative contemplation and intent—that they were not in any proper sense a security for debts, but a payment of debts; though thereby the debtor preferred creditors, the statute was in prohibition of preferences only when made by a general assignment.—*Ellison v. Moses, supra;* 3 Brick. Dig., 50, § 29.

The statute has received a liberal construction—a construction intended to suppress the mischief against which it is directed, and to promote equality among creditors which it manifestly favors. Prior to the adoption of the statute, general assignments were recognized as a distinctive security for the payment of debts. They passed to the assignee the entire estate, or title, or interest of the assignor, leaving in him only a possibility of reversion. And in this respect they differed from other forms and kinds of security, such as mortgages or deeds of trust, by which the debtor did not part with his estate, or right, or title absolutely, but only conditionally, and to which an equity of redemption inhered. As the policy of the statute was the withdrawal from the debtor of the power to prefer creditors, and the promotion of equality among them, the construction it received from an early day after it became of force, and which has been continuous, is, that the form or character of the instrument creating the preference or priority of payment, is not controlling. Whatever may be the form of the instrument, if it is a transfer of substantially all of the property of the debtor, subject to the payment of the debts— if by its terms the property is redeemable on the payment of the debts—or, if by express terms, or by implication of law, a trust results to the debtor of any surplus remaining after satisfying the debts, it falls within the statute, and is a common security for all creditors.— *Danner v. Brewer,* 69 Ala. 191. But it must be observed that this construction reaches only instruments of transfer or conveyance for the security of debts, proceeding from the act and will of the debtor, and, as was said in *Holt v. Bancroft, supra,* it is only preferences as a feature of such instruments the statute condemns.

The power of the debtor to prefer creditors is limited, not abrogated. He may now convert his property into money, and pay the money to one or more creditors, leaving all other creditors unpaid. The statute is incapable of extension to such a transaction, which is unas-

sailable if there be no secret trust or reservation of benefit to the debtor. So there are other modes by which preferences may be acquired, without an infringement of the letter or spirit of the statute. We repeat, that by no satisfactory process of reasoning does it seem to us possible to convert this judgment into a general assignment. With these views the case of *Rochester v. Armour*, 92 Ala. 432, is not necessarily in conflict. There, the confessed judgments were deemed component parts of the general assignment which was in contemplation, and was executed in point of time near to the confession of the judgments. Here the judgment stands alone, not connected with any assignment or transfer whatever, and there does not appear that any was ever executed.

The result is, the chancellor erred in overruling the motion to dismiss the bill for want of equity, and in the appointment of a receiver, and the decree must be reversed, and the appointment vacated. The decree was rendered in vacation, and of consequence the cause will be remanded.

Reversed and remanded.

