# Builders' & Painters' Supply Co. v. Lucas & Co.

*Bill to Declare a Judgment by Confession a General Assignment and for Receiver.*

1. *Appointment of receiver discretionary; probability of final relief.* The apointment of a receiver is a matter of discretion governed by the whole circumstances of the case, the most material of which is the probability that the complainant will ultimately be entitled to a decree.

2. *Confessed judgment not a general assignment.*—Prior to the act 'of 1896-97, the statute in reference to general assignments, their legal operation and effect, by its terms was limited to transfers or conveyances by which a debtor divested himself of title to all, or substantially all of his property or effects subject to the payment of debts, either as payment, or as security for prior debts; a judgment confessed, not a component part of a general assignment, was not within the operation of the statute, though by the registry in the court of probate, a lien was acquired on all the property of the debtor subject to execution.

3. *General assignment and fraudulent conveyance no common ingredient.*—A general assignment is not akin to a conveyance

[Builders' & Painters' Supply Co. v. Lucas & Co.]

fraudulent as to creditors; they have no common ingredient; a bill may not be framed in the alternative to have the assignment, transfer, sale, or other transaction, declared fraudulent and vacated in toto, or if not found fraudulent, but found to be a general assignment, that it may be decreed so to operate as a common security for all creditors.

4. *Act of 1896-97, to define general assignments, &c. unconstitutional.*—"An act to further define general assignments and to prevent the fraudulent disposition of property," (Acts, 1896-97, pp. 1089-1090), declaring (Sec. 2), that particular acts of a debtor, the confession of judgment, or procurement of attachment—shall operate as a general assignment, and (Sec. 3), that the conveyance of property with intent to hinder, delay, and defraud creditors, &c. shall be a criminal offense, is violative of Article IV, section 2 of the Constitution, declaring that "each law shall contain but one subject, which shall be clearly expressed in its title."

5. *When act void in toto.*—When two subjects are expressed in the title, and both are embraced in the body of the act, the whole act must be treated as void.

6. *Defect not cured by incorporation in Code.*—Acts passed at the same session as the Code, and not a part of the Code at the time of its adoption, but incorporated therein pursuant to legislative mandate requiring the commissioner to publish in the Code all acts passed at the same session, must derive their validity from the original enactment, and not from their introduction, or the manner of their introduction into the Code.

APPEAL from Montgomery City Court.
Tried before Hon. A. D. SAYRE.
The case is stated in the opinion.

TOMPKINS & TROY, for appellant, First National Bank, cited, *Bank of Florence v. U. S. Sav. & Loan Co.*, 104 Ala. 299; *Bell v. Goetter*, 106 Ala. 462; *Bank v. Dickinson*, 107 Ala. 270; *Perry Ins. Co. v. Foster*, 58 Ala. 522-3; *Brownold v. Posse*, 22 So. 667; *Ballentyne v. Wickersham*, 75 Ala. 539-41; *Weaver v. Lapsley*, 43 Ala. 228-9; *Yearby v. Cochran*, 101 Ala. 543-4.

HORACE STRINGFELLOW, for appellant, Builders' and Painters' Supply Co., cited, *Bell v. Goetter*, 106 Ala. 462; *Ballentyne v. Wickersham*, 75 Ala. 563; 63 Mich. 568; *Rochester v. Armour*, 92 Ala. 432; *Williams v. Dismukes*, 106 Ala. 409.

CRUM & WEIL, MARKS & SAYRE, and BLAKEY &

BLAKEY, *contra,* cited, *Gunter v. Dale,* 44 Ala. 639; *Ex parte Upshaw,* 45 Ala. 234; *Lowndes County v. Hunter,* 49 Ala. 511; *State ex rel. Rogers,* 107 Ala. 444; *State ex rel. Winter v. Sayre* MSS.; *Zeigler v. S. & N. R. R. Co.*

BRICKELL, C. J.—This is an appeal from a decree of the city court, sitting in equity, appointing a receiver to take possession and control of a stock of goods, the property, and all other assets, of the Builders' & Painters' Supply Company, a corporation organized and existing under the laws of this State, having its principal place of business in the city of Montgomery. The appellees, by whom the bill was filed on which the appointment of the receiver was made, are simple contract creditors, or creditors at large of the company. The purpose and prayer of the bill—and when analyzed, the allegations are not adapted or consistent with any other relief—is, to obtain a decree declaring that a judgment the First National Bank of Montgomery had obtained against the company, is in fact and legal effect a judgment by confession, operating or inuring like a general assignment containing preferences, to the equal benefit of all creditors of the company.

The title to the relief is based upon a recent legislative enactment, approved February 13, 1897, entitled "an act to further define general assignments and to prevent the fraudulent disposition of property." (Pamph. Acts, 1896-97, 1089-90.) The first section of the act is a substantial copy of the pre-existing statute in relation to general assignments, with the exception that it adds to mortgages given as security for a debt contemporaneously executed, pledges or pawns given as security for a like debt, excluding them from the operation of the statute. The second section reads: "That a general assignment within the meaning of the foregoing section shall include, in addition to the conveyances now defined as such by law, every judgment confessed, attachment procured by debtor, or other disposition of property by which a debtor conveys all or substantially all of his property subject to execution, in payment of or as security for a prior debt, or charges such property with the payment of such debt." The third and con-

cluding section is: "That every person who sells, removes or otherwise disposes of property subject to execution with the intent to hinder, delay, or defraud his creditors, or who fraudulently secretes, or withholds any such property from his assignee in any general assignment, must, on conviction, be punished by a fine of not more than five hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than six months."

The appointment of a receiver is matter of discretion governed by the whole circumstances of the case, the most material of which is the probability that the plaintiff will ultimately be entitled to a decree. As was said in *Bank of Florence v. U. S. Savings & Loan Co.,* 104 Ala. 299: "The primary inquiry is, whether there is shown a reasonable probability that the plaintiff asking the appointment will ultimately succeed in obtaining the general relief sought by the suit. If ultimate success is matter of grave doubt, or if it be clear the general relief sought can not be obtained, the appointment ought not to be made." The pre-existing statute in reference to general assignments, their legal operation and effect, by its terms was limited to transfers or conveyances by which a debtor divested himself of title to all, or substantially all, of his property or effects subject to the payment of debts, either as payment or as security for prior debts. A judgment confessed, not a component part of a general assignment, was not within the operation of the statute, though by the record or registry of it in the court of probate, a lien was acquired on all the property of the debtor subject to execution. *Bell v. Goetter,* 106 Ala. 462. It is therefore apparent that the appellee can not succeed in obtaining the relief prayed unless the recent enactment to which we have referred, is a valid exercise of legislative power.

The constitution, Art. 4, section 2, declares, with exceptions not now necessary to enumerate, that "Each law shall contain but one subject which shall be clearly expressed in its title." The argument of the counsel for the appellant is, that the title of the act, and the act itself, contains or embraces two distinct subjects—the definition of general assignments, and the prevention of the fraudulent disposition of property. Are these separate, distinct subjects, having no common ingredient, as known in prior legislation, and prior judicial

decisions? If they are, reluctant as are the courts to sit in judgment upon the title of legislative enactments, obedience to the constitution requires that the act be condemned.

A general assignment, or any transaction to which the debtor assents, and to which the operation and effect of a general assignment may be ascribed, by which all, or substantially all, his property is devoted unconditionally to the equal payment of his creditors, can not have in it any element of fraud—it can not be of damage or injury to any creditor—it is the appropriation which the law favors. In *Rapier v. Gulf City Paper Company*, 64 Ala. 342, it was said: "A general assignment by a debtor is not prohibited—it is not declared void. The only effect of the statute is in its operation, depriving it of the character of a particular security for a particular creditor and converting it into a general security for the equal benefit of all creditors who come in and claim under it. As between the parties, it operates according to its terms. Creditors not named in it, or those who have not assented to it, alone have the right to claim that it shall inure to the benefit of all the creditors. The assignee may enforce any and every right which springs out of it, against the assignor and all claiming under him. He will, however, stand, at the election of creditors, a trustee for their benefit, bound to appropriate whatever he may realize, to the payment of all the just debts of the assignor. The instruments on which the statute operates, are transfers for the security of one or more creditors, to the exclusion of, or in preference to the remaining creditors; and an indispensable element is, that substantially all the property of the assignor, subject to the payment of debts, is thereby conveyed."

In *Bell v. Goetter*, 106 Ala. 469, in construction of the amendatory statute, by which conveyances in payment of prior debts, were given the operation and effect of general assignments, it is said: "A general assignment, within the meaning and operation of the statute, in view of the repeated decisions in the construction of it, since its original introduction into our legislation by the Code of 1852, is capable of a clear and precise definition. It is a voluntary transfer by a debtor of all, or substantially all, of his property subject to the payment

of debts, for the security of one or more creditors in preference to others. The expression *voluntary transfer,* is not of course employed in the sense in which it is frequently used, that of not being supported by a valuable consideration, but as an expression of the true character of the transfer, that it is the act and proceeds from the volition of the debtor. It is a transfer of all the property of the debtor subject to the payment of debts; for if it is not, it would be a partial, and not a general assignment, and not within the operation of the statute." In *Gay v. Strickland,* 112 Ala. 572, it was said: "The purpose of the amendment of the statute, is to draw all such sales, all conveyances of substantially all the property of a debtor, in payment of a pre-existing or prior debt, within its operation, placing such sales or conveyances upon the same footing with instruments of assignment, or of other form of security for the payment of debts; engrafting upon each the same trusts—trusts for the equal benefit of all creditors. The sale or conveyance is not annulled; nor is it regarded as fraudulent. It is favored as the assignment or other form of security for the payment of debts is favored. At the election of other creditors, it inures to their benefit—the vendee becomes a trustee, holds the title passing by the sale or conveyance, but holds it for the equal benefit of all creditors, as if such had been the expressed purpose and object of the sale or conveyance. The same construction of the statute in reference to these sales or conveyances must be adopted which prevailed in reference to assignments, or other instruments of security for the payment of debts. The statute was amended, drawing the sale or conveyance within its operation, with the knowledge of the law-makers of the prevailing construction, and the presumption must be, with the intention to adopt that construction. As to assignments or other forms of security having the qualities of an assignment, they were read and construed, as if the priorities or preferences they created were blotted out, as if the statute were incorporated, and instead of the priorities or preferences, a security for the benefit of all creditors equally was expressed."

Upon the theory that a general assignment is not akin to conveyances fraudulent as to creditors—the settled doctrine of the court is, that a creditor's bill may not

be framed in the alternative—to have the assignment, transfer, sale, or other transaction, declared fraudulent and vacated in toto, or if not found fraudulent, but found to be a general assignment, that it may be decreed so to operate as a common security for all creditors.—*Lehman v. Meyer,* 67 Ala. 396; *Moog v. Tolcot,* 72 Ala. 210; *Heyer v. Bromberg,* 74 Ala. 524. The principle and reason was stated by SOMERVILLE, J., in *Moog v. Tolcot, supra:* "The dual aspects of the bill were clearly repugnant and inconsistent; the complainants seeking in the one alternative, *to destroy the valid*ants seeking one the one alternative, *to destroy the validity of* the conveyance, having it adjudged an absolute nullity; and in the other, *to sustain it as valid and legal* under the provisions of the statute, upholding it as a general assignment. The effect in the one case, is *to claim against* the conveyance, and in the other *to claim under it.*"

The first two sections of the act under consideration, strictly speaking, do not define general assignments, but they do declare that particular acts of a debtor—the confession of judgment, or procurement of attachment, shall have the operation and effect of a general assignment—shall inure to the equal benefit of all his creditors, with which fraud can not consist. The third makes certain acts of a debtor a criminal offense, punishable by fine and imprisonment, the intent being to prevent the commission of fraud, for the acts of themselves are but frauds. These acts were, first, the selling, removing or otherwise disposing of any of his property subject to execution by a debtor with intent to hinder, delay or defraud his creditors; and, second, the secreting or withholding of any such property by a debtor from his assignee in a general assignment. Now neither of the acts, thus made a criminal offense, is within the operation of the first and second sections, nor is it declared by either of these sections, that such acts can or ought to inure to the equal benefit of all the creditors of the debtor committing them. A conveyance by a debtor of all or a part of his property to a single creditor in absolute payment of an antecedent debt, if there is no material disparity between the value of the property conveyed and the amount of the debt, and no reservation of benefit to the grantor, has always been supported as a valid transaction, both at common

law and under our statutes, irrespective of the motives of the parties.—*Ellison v. Moses,* 95 Ala. 221; *Hodges v. Coleman,* 76 Ala. 103. For such act by a debtor no conviction could be had under an indictment for selling, removing or otherwise disposing of property subject to execution, with intent to hinder, delay, or defraud his creditors. And while judgments suffered and attachments procured by a debtor, with intent to hinder, delay or defraud his creditors, have been declared by our decisions to be fraudulent within the meaning of section 1735, Code of 1886, yet the procuring of the judgment or attachment by the debtor is not, as we have said, in any sense a sale, conveyance, or disposition of his property within the meaning of the third section. A judgment, though the law attaches to it a lien, does not create a *jus in re,*—constitutes no right in the property itself. The word "sells," as used in the statute, implies a divestiture of title by the debtor, and the words "disposes of," if they do not mean the same thing, imply some act of the debtor operating on the property itself, to place it beyond the reach of creditors, such as the removal or secreting of the property. But a judgment does not operate to divest or transfer the title, nor in any way affect the possession of the property, nor the power to sell it subject to the lien of the judgment; nor is the act of the debtor by which he confesses a judgment, or procures an attachment against himself, strictly speaking, a disposition of his property, within the meaning of the term as used in a strictly construed criminal statute.

The enactment, it is apparent, by its title expresses two separate, distinct, independent subjects—made separate and distinct by legislation, judicial decision, and their inherent nature and character. If it be not offensive to the constitution, it is difficult to conceive of an enactment that would fall within its prohibition. As two subjects are expressed in the title, and the act in its body embraces each, the whole act must be treated as void, "from the manifest impropriety," as said by Judge Cooley, "in the court choosing between the two, and holding the act valid as to the one and void as to the other."—Cooley Const. Lim. 176; *Ballentyne v. Wickersham,* 75 Ala. 533.

Since the rendition of the judgment, and the filing of

the bill, the Code of 1896 has become operative, into which the enactment is substantially introduced—the two first sections forming part of the civil Code (§2158), and the third section part of the criminal Code (§4759). If this enactment had formed parts of the Code at the time of its adoption, all infirmities of legislative procedure in its original enactment would have been cured.—*Bales v. State,* 63 Ala. 30. But it was not then parts of the Code, and was not re-enacted as parts of it. It was incorporated or introduced by the commissioner, in obedience to the legislative mandate, that all laws of enactment at the session of the adoption of the Code, should be introduced therein. Whatever of validity such laws may have is derived from their original enactment, and not from their introduction, or the manner of their introduction into the Code. Without considering whether the judgment assailed, could be regarded as a judgment confessed, within the meaning of the enactment, if it had been valid, it is clear the bill is without equity—that the complainants can not ultimately obtain the relief sought. The appointment of a receiver was therefore erroneous, and must be vacated. The decree is reversed and the cause remanded.