# Ballentyne v. Wickersham.

*Action for Malicious Prosecution.*

1. *Provision of Art. 4, § 2 of Constitution mandatory; how construed.*—The provision of section 2, Art. 4, of the Constitution of this State, ordaining that "each law shall contain but one subject, which shall be clearly expressed in the title," is mandatory; but its requirements are not to be exactingly enforced, or in such manner as to cripple legislation.

2. *Same.*—Under this clause of the Constitution, the title of a bill may be very general, and need not specify every clause in the statute, it being sufficient if they are all referable and cognate to the subject expressed; and when the subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it. But if clauses are contained in the act which are not so correlated to the subject expressed in the title, as to appear to follow as a natural and legitimate complement, they can not stand.

3. *Same.*—The constitutional inhibition is as emphatic, that a statute shall not embrace more than one subject, as is the mandate, that that subject shall be clearly expressed in the title; and hence, a statute embracing two subjects, both of which are expressed in the title, falls within the inhibition, and is unconstitutional and void.

4. *Same; act establishing an Inferior Court of Criminal Jurisdiction for Mobile County, etc., unconstitutional.*—The act approved February 12th, 1879, entitled " An act to establish an Inferior Court of Criminal Jurisdiction for the County of Mobile, and to define the jurisdiction of said court, and the criminal jurisdiction of justices of the peace in said county " (Pamph. Acts, 1878-9, p. 111), expresses in the title, and contains in the body thereof, two subjects, each distinct from, and independent of the other, in violation of the constitutional inhibition; and hence, it must be pronounced void, no part of it having been constitutionally enacted.

5. *Walker v. Griffith, 60 Ala. 361, doubted.*—The argument by which the conclusion was reached in the case of *Walker v. Griffith*, 60 Ala. 361, declared to be unsound, and not to be followed.

6. *Inferior Criminal Court of Mobile, not established by amendatory act of February 23rd, 1881.*—The amendatory act of February 23rd, 1881, did not and could not give validity to the original act (act of February 12th, 1879), except to the extent it re-enacted the provisions of the older enactment; and, thus interpreted, it is fatally incomplete, and did not

| | |
|---|---|
| 75 | 533 |
| 95 | 188 |
| 95 | 533 |
| 96 | 210 |
| 75 | 533 |
| 98 | 256 |
| 75 | 533 |
| 99 | 178 |
| 99 | 224 |
| 75 | 533 |
| 100 | 33 |
| 101 | 544 |
| 75 | 533 |
| 106 | 507 |
| 107 | 123 |
| 108 | 340 |
| 108 | 516 |
| 109 | 31 |
| 75 | 533 |
| 113 | 122 |
| 113 | 175 |
| 115 | 89 |
| 115 | 256 |
| 75 | 533 |
| 116 | 189 |
| d117 | 545 |
| 118 | 36 |
| 119 | 209 |
| 75 | 533 |
| 120 | 172 |
| 122 | 144 |
| 75 | 533 |
| 123 | 86 |
| f124 | 100 |
| 124 | 143 |
| 124 | 256 |
| 75 | 533 |
| 128 | 347 |
| 75 | 533 |
| 136 | 99 |
| 137 | 665 |
| 75 | 533 |
| 140 | 545 |
| 75 | 533 |
| 144 | 485 |

[Ballentyne v. Wickersham.]

establish the " Inferior Criminal Court of Mobile," the name thereby given to the court intended to have been established by the original act.

APPEAL from Mobile Circuit Court.

The name of the presiding judge not disclosed by the record.

This action was commenced on 4th June, 1881, by Hamilton Ballentyne against Morris D. Wickersham, to recover of the defendant damages " for maliciously, and without probable cause therefor, causing the plaintiff to be arrested on a charge of libel." The defendant pleaded, among other things, in substance, that the plaintiff having published and circulated certain libelous and defamatory matter of and concerning the defendant, the latter sued out a warrant of arrest, on affidavit, against the plaintiff before the criminal justice of Mobile county, charging him with libel and defamation, under which he was arrested; and that afterwards the plaintiff appeared, and was tried and convicted of. said offense in the Inferior Criminal Court of Mobile before the said criminal justice, and by him duly sentenced. It is also averred " that the said justice had jurisdiction of said cause." The opinion does not require a fuller statement of the averments of this plea. To this plea the plaintiff demurred, on the ground that said justice had no jurisdiction or authority to issue said warrant, or to try said cause, or to render final judgment therein. The court overruled the demurrer, and the cause was tried on issue joined on this and other pleas, the trial resulting in a verdict and judgment for the defendant. .

The ruling of the court above noted is here assigned as error.

JAMES COBBS, for appellant, cited on the point decided by the court, 66 Ala. 495; 42 Texas, 384; 41 *Ib.* 405; 34 *Ib.* 74; Cooley on Con. Lim. 141–7;

J. L. & G. L. SMITH, contra, cited, on same point, *Block v. The State*, 66 Ala. 493; *Woodson v. Murdock*, 22 Wall. 373; *Ex parte Moore*, 62 Ala. 471; *Walker v. Griffith*, 60 Ala. 361; *City of St. Louis v. Tiefel*, 42 Mo. 589; 2 Iowa, 280; 11 Texas, 673; Cooley on Con. Lim. p. 141; *State ex rel. v. McLaughlin*, (S. C. Mo.), Cent. Law Journ. Vol. 14, No. 23, p. 454.

STONE, J.—On February 12th, 1879, the act was approved " To establish an Inferior Court of Criminal Jurisdiction for the County of Mobile, and to define the jurisdiction of said court, and the criminal jurisdiction of justices of the peace in said county."—Pamph. Acts, 1878–9, p. 111. The first fourteen

[Ballentyne v. Wickersham.]

sections of the act are devoted to the subject of a criminal justice of Mobile county, declaring his jurisdiction and powers, and providing machinery for their exercise. The fifteenth section repeals or takes away all criminal jurisdiction, and *quasi* criminal jurisdiction of all other justices of the peace and notaries public, commissioned for the municipality, known as "the Mayor and Aldermen and Common Council of the City of Mobile;" leaves them conservators of the peace, but with civil jurisdiction only, so far as the right to hear and determine is concerned.

Section 16 of the act declares, "That justices of the peace within the county of Mobile, and outside of the limits described in the preceding section [the limits of the city of Mobile], in addition to the jurisdiction and powers now conferred by law, shall also have jurisdiction of horse-racing on the public roads, and also of offenses described in sections 4199, 4200, 4219, 4220, 4221, 4405, 4406 of the Code"—disturbing religious worship, disturbing females at public assemblies, etc., selling tainted or diseased meat, selling unwholsome bread, adulterating sugar, syrup or molasses, owning or having in possession sheep-killing dogs, hunting wild hogs. A considerable increase of criminal jurisdiction.

This statute, by its original enactment, and by its modification of laws then existing, provided for three classes of officers of inferior jurisdiction : First, a criminal justice of Mobile county—an officer, and with jurisdiction theretofore unknown. Second, it reduced the jurisdiction of all other justices of the peace in the corporate limits of the city of Mobile, to matters purely civil, and of private grievance. Third, it increased very materially the criminal jurisdiction of all justices of the peace in Mobile county, outside of the limits of the city of Mobile.

It was contended for the plaintiff in the court below, and the contention is renewed here, that this enactment violates the second section of the fourth article of the Constitution, which ordains that "each law shall contain but one subject, which shall be clearly expressed in its title," with certain exceptions, of which this is not one. The position taken is, that the title of this statute contains two subjects, and the body of the enactment three.

Constitutional limitations, similar to ours copied above, are found in many of the later State Constitutions, and in most of the States, as in this, it is declared to be mandatory. The abuses which called the provision into existence are clearly understood, and are twofold. Each subject introduced before the legislative department shall be considered and voted on singly, without associating with it any other measure to give it strength. Experience had shown that measures, having no common purpose,

and each wanting sufficient support on its own merits to secure its enactment, have been carried successfully through legislative bodies, and become laws, when neither measure could command the approval of a majority of that body. In common parlance, this is called log-rolling, and this the constitutional provision intended to interdict.

There was a second abuse, against which this provision was levelled. The subject of the act " shall be *clearly expressed* in the title." The intention of this was, that the title of the act or bill should inform the members of the legislature, and perhaps the public, of the subject on which the former were invited to vote and legislate. Matters foreign to the main objects of the bill had sometimes found their way into bills—surreptitiously, at times, it was charged—and thus the members were induced to vote for measures in ignorance of what they were doing. The constitutional provision intended to render a continuance of this abuse impossible.

There have been many rulings on constitutional clauses, similar to the one we are considering. And, as is usual in such cases, judges have differed in their interpretation. This court has committed itself in favor of the following propositions, which are in harmony with the rulings elsewhere in the best considered cases :

That the clause is mandatory.

That its requirements are not to be exactingly enforced, or in such manner as to criple legislation.

That the title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate to the subject expressed. And when the subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it. *Weaver v. Lapsley*, 43 Ala. 224 ; *Walker v. The State*, 49 Ala. 329 ; *Lockhart v. City of Troy*, 48 Ala. 579 ; *Woodson v. Murdock*, 22 Wallace, 351 ; *State ex rel. v. Squires*, 26 Iowa, 340 ; *Cannon v. Mathes*, 8 Heisk. 504 ; *State of Mo. v. Miller*, 45 Mo. 495 ; *Chiles v. Drake*, 2. Metc. (Ky.) 146 ; *Keller v. The State*, 11 Md. 525 ; *Simpson v. Bailey*, 3 Oregon, 515 ; *Lafon v. Dufrocq*, 9 La. An. 350. In *Division of Howard Co.*, 15 Kan. 194, it was said : " The 'subject' to be contained in a bill under section 16, article 2 of the Constitution, which provides that 'no bill shall contain more than one subject, which shall be clearly expressed in its title,' may be as broad and comprehensive as the legislature may choose to make it. It may include innumerable minor subjects, provided all these minor subjects are capable of being so combined as to form only one

grand and comprehensive subject ; and if the title of the bill, containing this grand and comprehensive subject, is also comprehensive enough to include all these minor subjects as one subject, the bill and all parts thereof will be valid." This language, it seems to us, is eminently just and proper. See also *Wenzler v. People*, 58 N. Y. 516 ; *Shields v. Bennett*, 8 W. Va. 74 ; *McGunnigle v. McKey*, 77 Pa. St. 81 ; *Single v. Supervisors*, 38 Wis. 363.

In *Dorsey's appeal*, 72 Penn. St. 192, the contention arose between mechanic's claim creditors, and judgment creditors. The lands were freehold. The title of the act, under which the mechanics claimed, was "An act relating to the liens of mechanics, material-men and laborers upon leasehold estates and property thereon, in the county of Venango." One section of the act extended the lien to a freehold estate. Its language, declaring the lien, is "on the ground of the owner necessary for the useful purposes of the buildings." The court, Agnew, J., said : " Reasons might be given why leaseholds should be subjected to a lien for work and materials, when a freehold would not be. The former are often of short duration, and engines, derricks, machinery, and even buildings may be removed therefrom during the term. But it is sufficient that the legislature has, by the title of the act, clearly confined the lien to leaseholds. This description, *ex vi termini*, excludes estates of a higher grade. The second amendment to the Constitution, adopted in 1864, provides that ' no bill shall be passed by the legislature, containing more than one subject, which shall be clearly expressed in the title, except appropriation bills.' The word, ' subject,' has a large signification, often embracing different kinds, different classes, and various modes, all belonging to the general subject. The word *estates* is itself an example, embracing fees, fee tails, estates for life, and estates for years, commonly called leaseholds. Had the qualifying term, ' leaseholds ' been omitted in this title, all the various kinds of estates of freehold would have been comprehended within the title, and the sale of a freehold interest under the lien would have been good. Mere generality of meaning in the title ought not to avoid a law." The section relating to freeholds, was declared unconstitutional, because it was neither expressed, nor comprehended within the title.

In the *People v. Allen*, 42 N. Y. (3 Hand) 404, the title of the act was, "An act to incorporate the Schenectady Astronomical Observatory." One clause of the statute directed the comptroller to loan to the corporation sixty thousand dollars of the capital of the common school fund. The comptroller refused to make the loan, and *mandamus* was prayed for to compel him to do so. The Court of Appeals, reversing the

[Ballentyne v. Wickersham.]

rulings of the lower courts, held that the subject of this loan not being expressed in the title of the act, that clause was in violation of the Constitution, which provided that private and local bills should relate to but one subject, which should be expressed in the title.

.The Constitution of Kentucky provides that "no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." The legislature passed an act with the following title: "An act to amend the second section of article sixty-three of the Revised Statutes, entitled limitations of actions and suits." In *Chiles v. Monroe*, 4 Metc. (Ky.) 72, the court said: "The title refers exclusively to the second section of the chapter on limitations. The subject (and only subject) of that section is the limitation of actions for the recovery of real property. But the act, which, according to its title, purports to amend but a single section of the chapter, is very much broader, and comprehends and operates upon almost every section of the entire chapter. The title is, therefore, misleading and delusive, affording no indication whatever of some of the subjects to which the act relates." The court ruled that the case was clearly within the letter and policy of the constitutional inhibition.—*Mewherter v. Price*, 11 Ind. 199; *Igoe v. State*, 14 Ind. 239; *People v. McCann*, 16 N. Y. 58; *Huber v. People*, 49 N. Y. 132; *Matter of Lands in Town of Flatbush*, 60 N. Y. 398; *Ex parte Hogg*, 36 Tex. 14; *Ex parte Conner*, 51 Ga. 571; *Brieswick v. Mayor*, *Ib.* 639; *State v. Shadle*, 41 Tex. 404; *People v. Denahy*, 20 Mich. 349; *Block v. State*, 66 Ala. 493.

The following cases appear to go to the ultimate verge in holding legislative provisions unconstitutional, on the ground that they were not embraced in the title.—*Parish of Bossier v. State*, 13 La. An. 433; *Foley v. The State*, 9 Ind. 363; *Cutlip v. Sh'ff of Calhoun Co.*, 3 W. Va. 588; *City San Antonio v. Gould*, 34 Tex. 49; *Smails v. White*, 4 Neb. 353.

And the following cases seem to touch the outside limit in the other direction.— *Williams v. State*, 48 Ind. 306; *Prescott v. City of Chicago*, 60 Ill. 121; *Kurtz v. People*, 33 Mich. 279; *Morton, Bliss & Co. v. Comptroller*, 4 S. C. 430; *Denham v. Holeman*, 26 Ga. 182. Our own case of *Walker v. Griffith*, 60 Ala. 361, can not be extended, without a virtual repeal of the constitutional provision. The argument, by which the conclusion in that case was reached, is unsound, and can not be followed. Whether the one subject was not the mere complement of the other, so connected with it as to constitute but one subject in fact, we need not now inquire. *Luehrman v. Taxing District*, 2 B. J. Lea (Tenn.) 425.

We approve, and adopt as our own, the following language

[Ballentyne v. Wickersham.]

of the Supreme Court of Minnesota, in *State ex rel. v. Kinsella*, 14 Min. 524: "The exigencies of legislation require that this provision should not be so strictly [literally?] construed as to cripple the legislature, by prohibiting the insertion into laws of those matters which, though they may not be specifically expressed in the title, are proper to the full accomplishment of the object so expressed; such is presumed to have been the intention of its authors. Courts, therefore, give it a liberal construction. The insertion in a law of matters which may not be verbally indicated by the title, if suggested by it, or connected with, or proper to the more full accomplishment of the object so indicated, is held to be in accordance with its spirit; but a more liberal construction can not be given, without letting in the evils which the provision was intended to exclude." We may add, that if the questioned clause, or clauses, be not so correlated to the subject expressed in the title, as to appear to follow as a natural and legitimate complement, then they can not stand under the clause of the Constitution under discussion.

But suppose a statute embraces two subjects, and both are expressed in the title. Is that in compliance with the constitutional requirement? Clearly not. The constitutional inhibition is as emphatic that a statute shall not embrace more than one subject, as is the mandate that that subject shall be clearly expressed in the title. If it were not, the greatest of the evils intended to be guarded against—legislative log-rolling—would be left unredressed. This precise question arose under a statute of the State of Louisiana, the title of which was, "An act relative to slaves and free colored persons." The whole act was declared unconstitutional, because both the title and the body of the act embraced more subjects than one.—*State v. Harrison*, 11 La. An. 722.

The first, and most important part, alike of the title and the body of the act we are considering, establishes an inferior court of criminal jurisdiction for the county of Mobile, and defines the jurisdiction thereof. This court was created and established under article 6, section 1 of the Constitution, which empowered the General Assembly, from time to time, to establish "inferior courts of law and equity, to consist of not more than five members."—§ 13. "The judges of such inferior courts of law and equity, as may be by law established, shall be elected or appointed in such mode as the General Assembly may prescribe." The act then proceeded to create the office of "criminal justice of Mobile county," to be elected by the qualified voters of the county at the general election in August, 1880, and to hold office for six years. And, until said first election, the governor was authorized to appoint some duly qualified

person to said office. The person elected such criminal justice was to be " learned in the law." He was required to give bond in the sum of three thousand dollars, and to "hold his office in the city of Mobile, in a building or room to be provided and furnished by the commissioners court of Mobile county, with suitable furniture, fuel, lights, books, and stationery, in the same manner as in the City Court of Mobile." The statute confers on such criminal justice large criminal jurisdiction, but no civil jurisdiction ; empowers him to punish by imprisonment or hard labor for the county, and constitutes his court a court of record, with a seal ; declares that said court shall be open at all times, except on Sundays and legal holidays ; and makes it the duty of the solicitor of Mobile county to appear before the said court and prosecute, when requested by said criminal justice, unless engaged in the city or circuit court. Said criminal justice is a salaried officer. The act also creates a marshal and deputy marshal, to be appointed by such criminal justice, with fixed monied salaries. The act contains many details, not necessary to be noticed here. It will be seen, in what is enumerated above, and more fully by an examination of the statute, that this criminal court of inferior jurisdiction is a judicial tribunal of very considerable importance.

Under the first clause of the caption of this act, we think the provisions of section 15 may be considered as properly embraced. They are cognate to the subject of the Inferior Criminal Court for Mobile County, and were necessary to the complete accomplishment of the purposes of this act, in creating a court of inferior criminal jurisdiction. They are not alien to the subject.

The second clause of the title to this act, is " to define . . the criminal jurisdiction of justices of the peace in said county." The officers known as justices of the peace are provided for by name in section 26 of article 6 of the Constitution. They are elected by the qualified electors of the precinct for which they are chosen, and have certain civil jurisdiction. All this the Constitution prescribes. By statute their term of office is fixed at four years, and they have criminal jurisdiction much less extensive than that of the criminal justice of Mobile county. They have no salaries, and their courts are not courts of record. Many other differences might be pointed out between their office and official functions, and those of the criminal justice. Section 16 of the act increases very materially the criminal jurisdiction of justices of the peace within the county of Mobile, and outside of the corporate limits of the city. It is confined to that subject alone. The subject of that section is clearly expressed in the second clause of the title of the act. Is it expressed, or comprehended within the first clause ? To test this,

let us suppose the title of the act had expressed but one of the two clauses. Take the first, which authorizes the establishment of an inferior court of criminal jurisdiction. Would any one contend that under such title, the criminal jurisdiction of justices of the peace within the county of Mobile, and outside of the city limits could be enlarged? There would be no natural connection between the two subjects, or dependence of one upon the other. The increase of the criminal jurisdiction of the justices of the peace could not in the least contribute to the power, jurisdiction, or official functions of the court of the criminal justice of Mobile county. Take the second clause— to define the criminal jurisdiction of justices of the peace in said county. No one would contend that under such title, an independent court of record, called an inferior court of criminal jurisdiction, and exercising large powers and jurisdiction, such as the statute confers on this court, could be established under it. Now, the two clauses of the title are so distinct from, and independent, each of the other, that neither aids the other, contributes to its full accomplishment, or makes up the complement of what would otherwise be incomplete ; and it follows irresistibly that both the title and the body of the act contain two subjects, and the act must be pronounced a failure; because no part of it was constitutionally enacted.

We do not affirm, in what is said above, that a title could not be framed, general enough and broad enough to embrace the whole scope of the act.—*Rogers v. Torbut*, 58 Ala. 523. All we decide is, that the legislature chose to express a minor subject, which was not broad enough to cover the entire contents of the act, and hence, they felt called upon to express two minor subjects. This case is not distinguishable in principle from *Dorsey's case*, 72 Penn. St., *Chiles v. Monroe*, 4 Metc. Ky., and *State v. Harrison*, 11 La. An., each of which is commented on above.

The statute we have had under consideration was amended by act approved February 23rd, 1881.—Pamph. Acts 257. The amendatory act did not and could not give validity to the original act, except to the extent it re-enacted the provisions of the older enactment. Thus interpreted, the later statute is fatally incomplete, and did not establish " The Inferior Criminal Court of Mobile." Notably, it fails to provide any mode of electing or appointing a criminal justice to preside in said court, not to mention many other fatal imperfections.

We deeply regret the conclusion we feel forced to announce in this case. We have no doubt " The Inferior Criminal Court of Mobile" was a very useful, and much needed tribunal. The predatory warfare, misnamed judicial administration, sometimes waged in cities against public repose, and especially against the

[Ballentyne v. Wickersham.]

too confiding, ignorant members of society, has sometimes brought reproach on what should be one of the highest functions of government. But we know not how to surmount constitutional barriers. We close this opinion with a quotation from *Prothro v. Orr*, 12 Ga. 36–40, opinion by Lumpkin, J.: "We approach this subject with reluctance, not only because the duty itself is one, at all times, of great delicacy, but we can not shut our eyes to the fact, that, owing to the haste of our legislation, many of our statutes will be found, we fear, upon close scrutiny, to be obnoxious to the same objection. But when the question is, whether we shall maintain a statute, or the Constitution, which is the paramount law, and which we are constrained by our oath of office to support and defend, we can not hesitate. We must maintain conscience void of offense, whatever we do, or omit to do. I am aware of the importance of adhering to decisions, once solemnly made. It has been truly said that a greater evil can scarcely attend a court, than that the decisions of such a tribunal should be unstable and fluctuating. There is, however, a greater evil than this, and that is, to forfeit one's self-respect by committing deliberate perjury in the sight of high heaven."

There is another constitutional question raised in this case, which, in future legislation, it would be well to guard against. The Constitution, section 13 of the Declaration of Rights, declares "that in all indictments for libel, the jury shall have the right to determine the law and the facts, under the direction of the courts." The argument is, that inasmuch as the Court of Inferior Criminal Jurisdiction of Mobile is made the judge of law and fact, and has no jury, jurisdiction of any prosecution for libel, whether under indictment or warrant of arrest, can not constitutionally be conferred on that court. We merely state the question, to call attention to it, without intending to intimate an opinion upon it.

The judgment of the circuit court is reversed, and the cause remanded.

BRICKELL, C. J., dissenting.