[White, Auditor v. Burgin.]

# White, Auditor *v.* Burgin.

*Application for Mandamus.*

1.  *Constitutional law ; construction of convict statute ; when certain provisions not expressed in the title.*—The caption of the act approved February 18, 1895, "to regulate the management of State and county convicts," (Acts 1894-95, p. 849), does not express the subject of the provisions of sections 84 and 85 of said act, relative to the payment by the State of certain costs incurred in the prosecution, trial and conviction of convicts ; and said sections are, therefore, unconstitutional and void, as being violative of the provisions of sections 2 of article IV of the Constitution.

2.  *Same ; same ; act of February 14, 1893.*—Section 54 of the act approved February 14, 1893, "to create a new convict system for the State of Alabama, and to provide for the government, discipline and maintenance of all convicts in the State of Alabama," (Acts of 1892-93, p. 194), which provides for the payment of the costs of conviction in certain cases out of the fund arising from the labor of convicts, is cognate to the purposes expressed in the caption of the act, and, therefore, being embraced in the title of said act, the provisions of section 54 of said act constitute a valid enactment for the purposes therein expressed.

3.  *Same ; same ; section 54 of act of February 14, 1893, repeals act of February 25, 1889.*—The act approved February 25, 1889, "to provide for the payment of costs of conviction of felony, where the defendant is sentenced to imprisonment in the penitentiary," (Acts of 1888-89, p. 55), providing that the clerk of the court shall send the bill of costs of each conviction to the Auditor, who shall examine the same, and if found to be correct, draw his warrant therefor, being wholly inconsistent with section 54 of the act approved February 14, 1893 (Acts of 1892-93, p. 194), providing that such bills of cost shall be sent to the superintendent of convicts, who shall examine the same, and if correct, request the Auditor to draw his warrant on the State Treasurer therefor, said act of 1889 is impliedly, if not expressly, repealed by the latter act of 1893.

4.  *Costs in criminal cases ; when Auditor not subject to mandamus for failure to draw his warrant in favor of clerk.*—When on an application for *mandamus*, filed by the clerk of a court, to compel the Auditor to draw his warrant upon the State Treasurer, in favor of the clerk for the payment of costs accrued in criminal cases, the petition not only fails to show that the bill of costs was forwarded to the superintendent of convicts, and by that officer forwarded to the Auditor with the request for its payment, but it affirmatively appears from the petition

that the said bill was forwarded to the Auditor in the first instance, and upon such presentation he refused to draw his warrant for its payment, there is not shown such a case as would authorize the issuance of *mandamus*; the averments of the petition showing that the Auditor was without the authority to draw the warrant in favor of the petitioner.

APPEAL from the City Court of Montgomery.

Heard before the Hon. JOHN G. WINTER.

The appellee, William M. Burgin, the clerk of the Criminal Court of Jefferson county, filed a petition addressed to the Judge of the City Court of Montgomery, in which he averred that on November 27, 1895, one Henry Johnson was tried and convicted of grand larceny in the Criminal Court of Jefferson county, and sentenced to the penitentiary; that on Februray 26, 1896, the petitioner made out and forwarded to the Auditor, a full and complete bill of costs incurred in said case, which was duly presented, and the petitioner demanded of the Auditor a warrant on the State Treasurer for the amount of the costs as shown by said bill, which demand was refused.

The prayer of the petition was for a writ of *mandamus* to compel the Auditor to draw his warrant on the State Treasurer in favor of the petitioner. To this petition, the Auditor demurred upon the following grounds : (1.) Because the petition upon its face alleges and discloses that the bill of costs was forwarded for approval to the Auditor of the State, whereas it should have been forwarded to the President of the Board of Convict Inspectors, whose duty under the law it would have been to carefully examine the same, and if found correct request the Auditor to draw his warrant on the State Treasurer in favor of the clerk for the amount of the said bill. (2.) Because the petition in this cause shows and alleges that the bill of costs in this case was not, as required by law, forwarded to the President of the Board of Convict Inspectors for examination and approval by him, but was contrary to law forwarded to the Auditor in the first instance, with the demand that he draw his warrant in favor of the clerk. (3.) Because as touching the cost bill in this petition mentioned and complained of in this proceeding, there was not presented to the Auditor the request of the President of the Board of Convict Inspectors that he draw his warrant in favor of the clerk for the amount of the said cost bill. (4.) Because there

[White, Auditor v. Burgin.]

is no law requiring the Auditor to examine and approve cost bills in cases of conviction to the penitentiary. The court overruled the demurrers. From this judgment the Auditor prosecutes the present appeal, and assigns as error the overruling of said demurrer.

WILLIAM C. FITTS, Attorney-General, for appellant.— Sections 84 and 85 of the act "to regulate the management of State and county convicts," (Acts 1894-95, p. 869) are not unconstitutional. The provisions of these sections being germane to the management and control of the convicts of the State.

The act of 1892-93 is repealed by section 115 of the act of 1894-95, and that act repealed the act of 1888-89. So that if section 84 of the present act is unconstitutional, there is no law for the payment of any costs out of the convict fund. But it is contended that section 54— Acts 1892-93, p. 214,—is also unconstitutional, because under the title of the act, no provision can be made for the payment of costs. While we may grant for the sake of argument that no cost bill could be enacted, fixing what services shall be charged as costs, yet it is perfectly plain that there is power to say what items shall be paid out of the convict fund.

The title of the act of 1892 (Acts 1892-93, p. 194) is much more comprehensive than the one under consideration. It is to "Create a new convict system for the State of Alabama, and to provide for the government, discipline and maintenance of all convicts in the State of Alabama." It creates a new convict system. To create, is to "bring into existence," to "produce," to "make."—Century Dictionary. In the making of a convict system, or any system of government, the disposition of the revenue, or resources upon which it depends for support is one of the most material things to be done. Surely then the legislature had the right to say in what way this revenue should be appropriated and disposed of, and to allow a part of it to be paid out as costs. And this section does not say how much any item of costs shall be, but simply that certain costs shall be paid, leaving the amount of each item as before prescribed by law. If in making a system the legislature can not provide for the expenditure of the revenue of that system, its power is small indeed. By comparing

[White, Auditor v. Burgin.]

section 54, Acts 1892–93, p. 214, with Acts 1888–89, p. 55, it will be seen that they are inconsistent with each other, and can not stand together, and the latter is repealed by the former. If the act under consideration, and the act of 1892–93 were intended for the administration of the convict system, then the disposition of the revenue is certainly "necessary to make a complete enactment in regard to it."—75 Ala. 536 ; *Ex parte Gayles*, 108 Ala. 514. While we admit, as before said, that a cost bill could not have been made, we are certain that the legislature can prescribe how much of the costs shall be paid. It follows then, that section 84 of the act of 1894–95, is constitutional, as is also that of 1892–93, section 54, which does not undertake to fix the amount of any item, or of the bill of costs, and that the act of 1888–89, p. 55, is repealed.

B. M. ALLEN, *contra*.—1. Sections 84 and 85 of an act entitled "An act to regulate the management of State and county convicts," approved February 18, 1895, (Acts 1894–95, p. 849) are unconstitutional, being violative of Article IV, § 2, of the constitution of Alabama, requiring every law to contain but one subject, which shall be clearly expressed in the title.—*Ex parte Gayles,* 108 Ala. 514 ; *Ballentyne v. Wickersham,* 75 Ala. 530.

2. Section 115 of act entitled "An act to regulate the management of State and county convicts" (Acts 1894–95, p. 849), repeals an act on the same subject approved February 14, 1893, an act entitled "An act to create a new convict system for the State of Alabama, and to provide for the government, discipline and maintenance of all convicts in the State of Alabama."—(Acts 1892–93, p. 194). The act of 1894–95 would be effective as to the repealing clause, although all of said act might not be constitutional. Parts of a statute may be unconstitutional, and the other parts not subject to the same infirmity.—*Randolph v. Builders & Painters Supply Co.,* 106 Ala. 501. If the act of 1894–95 is inoperative as a repealing enactment, the act of 1892–93 is unconstitutional in the same particulars and for the same reasons as the act of 1894–95.

3. The suit was correctly brought by the appellee in his official capacity as clerk of the criminal court of Jefferson county. It is a very general principle of the

common law, that public officers, though not authorized by statute, have a capacity to sue, commensurate with their public trusts and duties.—*Morrow v. Wood*, 56 Ala. 7; *Overseers of Pittstown v. Overseers of Plattsburgh*, 18 John. 497; *Supervisors of Galway v. Stimson*, 4 Hill 136; *Looney v. Hughes*, 26 New York 514.

4. Among other authorities bearing upon the question raised by this appeal are the following: *Tims v. The State*, 26 Ala. 165; *State v. LaCrosse*, 11 Wis. 51; *Sheppardson v. R. R. Co.*, 6 Wis. 605; *Ex parte Upshaw*, 45 Ala. 234; *Board v. Barber*, 53 Ala. 589; *Riggs v. Brewer*, 64 Ala. 285; *George v. Skeates*, 19 Ala. 738; Sedgwick on Stat. & Con. Law, 104; Endlich on Int. of Statutes, §§ 199 and 200.

McCLELLAN, J.—The caption of the act, approved February 18, 1895, "To regulate the management of State and county convicts," as the word "management" therein has been construed and defined by this court, is not sufficiently broad and comprehensive to embrace the provisions of sections 84 and 85 thereof, relative to the payment by the State of certain costs incurred in the prosecution, trial and conviction of convicts. These provisions are indeed obviously even more foreign to the "management of convicts" than that part of section 94, which provides when the sentence shall be to the penitentiary and when to hard labor for the county, and which was held to be unconstitutional, because not expressed in the title of the act, in *Ex parte Gayles*, 108 Ala. 514; and upon the considerations adverted to in that case, and the authority of it, and we hold that sections 84 and 85 of said act are unconstitutional and void.

The caption of the act approved February 14, 1893, in relation to convicts is as follows: "To create a new convict system for the State of Alabama, and to provide for the government, discipline and maintenance of all convicts in the State of Alabama." The second clause of this caption, "and to provide for the government, disciple and maintenance of all convicts in the State of Alabama," is, in substance, the same as the entire caption of the act of 1895, "To regulate the management of State and county convicts." So, that the difference between the captions of the two enactments lies in the absence

from the caption of the later act of the first clause in the caption of the earlier one, viz. : "To create a new convict system for the State of Alabama." These words are manifestly much broader than either the second clause of the caption in which they occur, or the whole caption of the act of 1895. Indeed, they are sufficiently comprehensive to cover any provision for the government, discipline and maintenance of convicts, since these things are all suggested by the words "convict system," and are, indeed, but necessary component parts of any convict system ; and beyond that, they manifestly embrace every provision necessary or proper in and to the creation, establishment and administration of a perfect and complete system for the confinement, occupation, &c., &c., of convicts. The labor of convicts, the products or proceeds of their labor and the disposition of such products or proceeds, are all matters naturally, and even necessarily, entering into the idea of any convict system, any statutory effort to provide a convict system ; and while no particular disposition of the proceeds of convict labor can be said to be a necessary part thereof, yet any disposition the legislature would see proper to make would be cognate to the general purpose of establishing a convict system, and complementary to the idea involved in the expression of that purpose, and therefore covered by and embraced in the title, though not expressed in words thereby, within the intent and meaning of the constitutional requirement that each act shall contain but one subject, which shall be clearly expressed in its title.— *Ballentyne v. Wickersham*, 75 Ala. 533 ; Const. Art. IV, § 2. And it is not open, we think, to serious doubt that section 54 of the act of 1893, providing for the payment of the costs of conviction, it being the clear intent, if not the express provision, of the statute that such costs should be paid out of the fund arising from the labor of convicts, is cognate to the purpose expressed in the caption, and hence is embraced in the title to the act.

The act of February 25, 1889, "To provide for the payment of costs on convictions of felony, where the defendant is sentenced to imprisonment in the penitentiary," is wholly inconsistent with the provisions of section 54 of the act of 1893, notably in respect of the conditions which the Auditor is authorized to draw his warrant on the treasury for the payment of such costs ; the

later act requiring the bill of costs to be sent to the superintendent of convicts, and providing that after the convict has been received in the penitentiary, that officer, if he finds the bill of costs to be correct, "shall request the Auditor to draw his warrant on the State Treasurer" for the correct amount of said cost bill—and this request is the Auditor's sole authorization to draw such warrant—while the act of 1889 provided that the clerk should forward the cost bill directly to the Auditor, that he should carefully examine the same, and, if he found it correct, he should draw his warrant on the treasury for the amount of it, &c., &c. Being thus, and in other respects, inconsistent with the act of 1893, the act of 1889 was impliedly, if not expressly, repealed by it. See section 60.

Whether the act of 1893, in respect of its 54th section, was in turn repealed by the act of 1895, we need not decide. Whether so or not, the petition for *mandamus* in this case does not present a case for the awarding of that writ. If the act of 1893 was not so repealed, it is the law applicable to the case, and the petition not only fails to show that the bill of costs was forwarded to the superintendent of convicts, and by that officer forwarded to the Auditor, with a request for its payment, but to the contrary, shows affirmatively that the bill was forwarded to the Auditor in the first instance, and that the *mandamus* is sought because he, on such presentation, refused to draw his warrant for its payment. Assuming that section 54 of the act of 1893 is still of force, the Auditor was without any authority to draw his warrant in the absence of a request by the superintendent of convicts, and his refusal was perfectly proper. On the other hand, if section 54 of the act of 1893 was repealed by the act of 1895, there is no law authorizing the Auditor, under any circumstances, to draw his warrant for the payment of the costs of convictions, when the sentence is to the penitentiary.

The lower court erred in overruling the demurrer to the petition, and in awarding the writ prayed for therein. The judgment below must be reversed, and a judgment will be here entered sustaining the demurrer and dismissing the petition.

Reversed and rendered.