[Ham v. The State, ex rel. Buck.]

# Ham *v.* The State, *ex rel.*, Buck.

*Quo Warranto.*

(Decided April 23, 1908.   47 South. 126.)

1. *Quo Warranto; Action to Try Title to Public Office; Complaint; Sufficiency.*—A petition in quo warranto to try title to public office which simply seeks to oust one alleged to usurp the office which alleges that such one usurps, unlawfully holds and exercises the office, states a cause of action.   (Sec. 3420, Code 1896) ; But if it is desired that a judgment be rendered to determine the party entitled to the office it must go further and set out the facts on which relator relied to sustain his title to the office, and must specify the objections intended to be made to the title of the respondent to the office.

2. *Same; Answer.*—As an answer to quo warranto to try title to an office an allegation which admits that relator and defendant were candidates and that a primary election had been previously held in the town for the election of a nominee for the office, and that defendant and relator were candidates and agreed to abide the result of the same and that in the primary defendant was elected as nominee, is frivolous and irrelevant to any proper issue in the case, and shoud be stricken on motion.

3. *Pleading; Allegation; Conclusions of Law.*—The facts of the disqualification of voters should be alleged, in a proceeding to exclude the defendant from a public office and award the office to relator ; hence, an allegation that persons named who· voted for defendant were not qualified as legal voters is a mere conclusion of law and insufficient.

4. *Election; Contest; Statute.*—The charter not conferring on the mayor and councilmen jurisdiction to determine cases of contested election, but merely creating them a board to declare the result of an election, their declaration is not res adjudicata as to the right of a party to contest the title of one declared elected.   (Local Acts 1898-9, p. 1193.)

5. *Same; Evidence.*—It is not permissible to ask a voter, in an election contest, as to whether he had registered as a voter prior to the election.   (Sec. 186-7, Const. 1901, Gen. Acts, 1902, secs. 15-16, pp. 446-7.)

6. *Same; Qualification of Voters; Municipal Election; Application of General Laws.*—The provisions of the general election law requiring the payment of poll tax and registration as the qualifications for a legal voter are applicable in determining who are the qualified electors in a municipal election ; in this instance the charter of the town of Elba fixes the qualifications only in respect to the time of residence in the state or town.   (Local Acts 1898-9, p. 1193.)

7. *Same.*—The provision of the general election law which requires the registrars to meet on certain days next preceding the

[Ham v. The State, ex rel. Buck.]

election, does not apply to an election for town officers held under the power conferred by the charter.

8. *Same; Contest; Instructions.*—The court in its instructions in reference to qualification of voters, in an election contest, should state the requirements of the law in respect to the liability for poll tax and registration, and leave it to the jury to determine the facts under the statement of the law.

9. *Same.*—An instruction, in an election contest, which directs the jury to ascertain and declare the total number of legal votes found to have been cast for relator and defendant, and if the legal vote cast for relator exceeds the total legal vote cast for respondent, they should declare the relator legally elected, but if the total vote cast for respondent exceeded the vote cast for relator they should declare the respondent duly elected, having reference only to the legal votes cast in reaching their conclusion, was not erroneous as suggesting to the jury an improper method of arriving at their verdict.

10. *Statutes.—Title; Sufficiency.*—While the title of an act may be very general and need not specify every clause of the statute, yet, the title of Local Acts 1903, p. 160, (Charter of Elba) is not sufficiently broad to include the provisions incorporated in the act that the town shall not be required to keep in repair such county bridges as are located within the territory described and sought to be annexed to the town; and hence so far as that provision is concerned, the act is void.

11. *Same.*—Where two subjects are expressed in the title of an act, and both are embraced within the body thereof, the entire act will be treated as void, but if only one subject is expressed in the title, and the body of the act contains matter not within the title, the matter not so contained will be expunged as unconstitutional, and if such matter is distinct and separable from that expressed in the title, and the matter left is not dependent upon the matter expunged, the part not expunged will be permitted to stand, provided the effect can be given to the legislative intent.

12. *Same; Local Acts; Notice.*—Where notice of the intention to apply for the passage of a local act gives the substance of the proposed bill, and is published a sufficient length of time before the introduction of the bill, it is a sufficient compliance with section 106, Constitution 1901, although the notice did not contain the substance of the invalid section of the bill, added subsequently to its introduction.

13. *Elections; Contest; Mode.*—Where no contest for the election of mayor of an incorporated town is given by statute, the election may be contested by a proceeding in the nature of quo warranto.

14. *Witnesses; Examination; Privilege; Waiver.*—Where the witness did not claim the personal privilege of refusing to answer a question as to whether or not he voted illegally, the court properly overruled an objection to the question.

14. *Same; Interest.*—The fact that a witness voted against a candidate in an election did not show that he had such an interest in the proceedings to contest such election as to show bias.

[Ham v. The State, ex rel. Buck.]

16. *Same; Impeachment; Evidence.*—The bad state of feeling existing between a witness and a person who is neither a party nor a witness in a proceeding is not competent evidence to show bias.

17. *Evidence; Opinion Evidence; Jury Question.*—Where a witness appeared before a jury, thus giving them an opportunity to observe him, it was not competent for another witness to express the opinion that such witness looked to be forty or forty-five years old.

18. *Same; Relevancy; Residence.*—The fact that a person had relatives in the town, and that his father and mother resided near the town, was not competent on the question as to whether such person was a resident of the town and qualified to vote.

19. *Same; Judicial Notice; Historical Facts.*—The court will take judicial notice of the fact that the battle of Atlanta in the war between the State, occurred on July 20, 1864, since the court takes judicial knowledge of historical facts.

20. *Domicile; Evidence; Declaration.*—The declarations of witnesses that a town is their home, is not competent evidence to prove their domicile.

21. *Appeal and Error; Harmless Error; Exclusion of Evidence.*— Where the poll lists and ballots in the election were in evidence and showed certain persons voted for relator, if it was error, to sustain objection to a question to a witness as to whether or not he had heard such person say whom he had supported for the office of mayor at the town election, it was harmless.

22. *Same; Admission of Evidence.*—Where a declaration made by a person did not disprove him a resident of the town in which he voted, the declaration should have been excluded.

23. *Same.*—The court takes judicial notice of historical facts, and if it was erroneous to permit a witness who was engaged in the battle to state the date of the battle of Atlanta in the war between the states, it was harmless.

24. *Charge of Court; Instructions Assuming Facts.*—A charge may properly assume as facts matters as to which there is no longer any controversy.

APPEAL from Coffee Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by the state, on the relation of A. V. Buck, against J. N. Ham, to try the title to the office of mayor of Elba, and to oust respondent from the office and declare relator entitled thereto. From a judgment for relator, respondent appeals. Reversed and remanded.

Paragraph 4 of the answer of respondent is as follows: "Respondent admits that under and by virtue of the provisions of the charter of the town of Elba an

election was held in said town on the first Monday in June, towit, June 3, 1907, for the purpose of electing a mayor and five councilmen for the term of one year beginning on said date. He admits that the said informant and this respondent were candidates in said election, although respondent alleges that a primary election had been previously held in said town for the election of a nominee for said office, and both of said parties, this respondent ond said Buck, were candidates, and agreed to abide by the result of the same, and in said primary this respondent was elected as such nominee." Motion was made to strike all of the words from this paragraph, beginning with the words, "although respondent alleges that a primary," throughout the balance of the paragraph.

The witness Warren was asked the following question: "State if you had registered as a voter prior to the date of the election in question held on June 3d." The witness Bryant was asked the following questions: "Just before the election, did you hear Wood say who he supported for mayor in said election?" Also: "Who did you vote for in said election?" The witness Page was permitted to say that Bryant looked to be 40 or 45 years old, and Paige was also asked if he did not vote against respondent in said election.

The oral charge of the court, excepted to, is as follows: "(1) The county registrars have no authority to meet on the day of the election in Elba and register voters, and a certificate issued by them on that day to a person who had not previously registered in the county would not authorize such person or persons to vote in the election held in Elba on June 3, 1907, the day of issuing the certificate. (2) In determining whether or not E. D. Tucker was a qualified voter in said election the jury will look to all

the testimony in the case, including the registration book of 1904, introduced in evidence, and if they are reasonably satisfied from the evidence that he was registered in 1904, and that he was at the time of the election a resident of the town of Elba, still he would not be entitled to vote unless he had paid all his poll taxes since the adoption of the Constitution of 1901, for which he was liable; that is, since he became a resident of the state of Alabama. (3) When they are making up their verdict, and are considering who were illegal voters in the election, the jury shall take up the name of each person whose qualifications were in issue, and decide upon his right to vote separately until all were passed upon, and for whom each of those decided to be illegal voted, and when they have thus decided as to the legality of all the voters contested by the relator and the respondent they will take from the total vote counted for the relator all illegal votes found to have been counted for him, and from the total vote counted for the respondent all the illegal votes found to have been counted for him, and their verdict shall declare the total number of legal votes found to have been cast for each, the relator and the respondent, and if the total legal vote cast for the relator exceeded the total legal vote found to have been cast for the respondent in said election they shall declare the relator the legally elected mayor of the town of Elba, but if the total legal vote found to have been cast for the respondent exceeded the total legal vote found to have been cast for the relator they shall declare the respondent the duly elected mayor of the town of Elba."

J. F. SANDERS, for appellant. The petition was demurrable for failure to allege the facts showing the disqualification of the contested vote.—*Wade v. Oates*, 112 Ala. 325; 17 Ency. P. & P. 460; McCreary on Elections,

sec. 467. The petition should have negatived the qualifications prescribed for voters by the act incorporating the town of Elba.—*State ex rel. v. Crook,* 126 Ala. 600. There is no allegation that the contested votes were counted in the final and legal canvass of the votes by the board of mayor and aldermen.—*Patrick v. DeBardelaben,* 90 Ala. 13; *Rodgers v. Brooks,* 99 Ala. 31. The 5th ground of demurrer should have been sustained.—*Wade v. Oates, supra.* Under the charter, the mayor and aldermen had the exclusive right to hear and determine the contest, and having acquired jurisdiction for that purpose, it is conclusive on this jurisdiction.—*Gay v. Briarfield,* 94 Ala. 308; *Foster v. Bank,* 17 Ala. 675; 3 Mayf. 1197; 12 Ency. P. & P. 150. The act extending the limits of the town of Elba is unconstitutional and void.—Cooley's Const. Lim. p. 247; *Slawson v. Racine,* 13 Wis. 398; *State v. Dausman,* 28 Wis. 541. It was not proper to show the declaration of Woods as to whom he supported for mayor.—*Black v. Pate,* 130 Ala. 514. It was not proper to ask the witness Bryan who he voted for in said election.—*Black v. Pate, supra;* s. c. 136 Ala. The question to Page was proper.—*A. G. S. v. Johnson,* 128 Ala. 282.

J. A. CARNLEY, for appellee. The court properly overruled the demurrers to the information.—*Jackson v. The State, ex rel.,* 143 Ala. 145; *Wade v. Oates,* 112 Ala. 325; *The State ex rel. v. Elliott,* 117 Ala. 113; *Parks v. The Statet, ex rel. Owens,* 100 Ala. 634; 17 Ency. P. & P .457, et seq. The charter creates the board of mayor and aldermen of the town of Elba a canvassing board, and does not displace the remedy to contest the election on quo warranto.—Authorities supra, and *Echols v. The State, ex rel.,* 56 Ala. 131; McCreary on Elections, sec. 345; Meacham on Public Offices, 24; 44 Pa. St. 332:

70 Am. Dec. 103; 15 Ohio St. 114; 38 Mich. 405; 80 N. Y. 117. The court properly struck parag. 4 of respondent's answer.—*Couch v. Davidson,* 109 Ala. 313; *Davis v. L. & N.,* 108 Ala. 660; *Ry. Co. v. Bridges,* 86 Ala. 448. The local act extending the corporate limits of Elba is not void, because sec. 106 of the Constitution was not complied with. Sufficient notice was given.— *Law v. The State,* 142 Ala. 62; *State ex rel. v. Thompson,* 142 Ala. 107; *Wallace v. Bd. of Revenue,* 140 Ala. 491. Although the act contained two subject matters, the title is sufficiently broad to cover the extension of the corporate limits and as that is not dependent upon the other matter in the act, such matter may be stricken leaving the act good as to the extension of the limits.— 130 Ala. 148; 69 Ala. 10; 115 Ala. 87; 99 Ala. 117; 59 Ala. 507; 103 U. S. 80; Cooley's Const. Lim. 177; 101 Ala. 531; 109 Ala. 28; 111 Ala. 308; 146 Ala. 136. The registration list is the best evidence as to who is registered.—General Acts 1903, p. 447; 10 A. & .E Ency. of Law, 840. The poll list and ballot is the best evidenc as to how the voters voted.—*Black v. Pate,* 103 Ala. 515; *Collins v. The State,* 138 Ala. 57. The other objections to evidence, if error, were without injury.

DENSON, J.—This action is brought in the name of the state, on the information of A. V. Buck, against J. N. Ham, to try the title of the respondent to the office of mayor of Elba, to oust him from the office, and to declare the relator entitled to the same. Section 3420, Civ. Code 1896, provides that such action may be brought "when any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any office in a corporation created by authority of this state." Section 3 of the information or complaint alleges that the respondent usurps, unlaw-

fully holds, and exercises the office of mayor of the town of Elba, which is a public and civil office within the state. In the cases of usurpation and ouster it has been expressly decided that these averments are sufficient against demurrer.—*Jackson v. State, etc.,* 143 Ala. 145, 42 South. 61; *Frost v. State, etc.,* 153 Ala. 654, 45 South. 203. But when there is sought by this proceeding "not only the exclusion of the defendant from the office in controversy, but the installation of the relator, the proceeding is essentially and practically a civil suit, wherein the complaint should set out the facts upon which the relator relies to sustain his title to the office, and, so far as practicable, specify the objections intended to be made to the title of the respondent."—*State v. Price,* 50 Ala. 568; *State v. Goodgame,* 153 Ala. 646, 45 South. 307. And the statute (Civ. Code 1896, § 3428) requires that "the complaint in such action must concisely and clearly set forth the act of omission complained of."— *State ex rel. Johnson v. Sou. B. & L. Ass'n.,* 132 Ala. 50, 31 South. 375; *L. & N. R. R. Co. v. State ex rel. Gray,* 154 Ala. 156, 45 South. 296.

In the sixth paragraph of the information it is averred that certain named persons voted in the election held for mayor for the respondent, and that said persons were not at the time they voted qualified and legal voters of said town under the law. The demurrer to the information raises the point that it should allege wherein said persons were disqualified, and not legal voters—what constituted their disqualification. It cannot be denied that the averment is a legal conclusion (12 Am. & Eng. Ency. Pl. & Pr. 1030), nor that it is not an averment in respect to a matter which may be said to be peculiarly within the knowledge of the respondent (as in negligence cases). It may well be that the pleader entertains the opinion that the persons named

.are, as a matter of law, disqualified, and not
legal voters; whereas, if the facts upon which
he bases the opinion are alleged, the court might
reach a different conclusion. The disqualification
vel non of the persons named is a vital question in the
case. The rightfulness, or not, of respondent's claim to
the office, as well as that of the relator's, depends upon
it; and we.hold that the facts upon which the averment
that the parties named are disqualified and illegal voters
is based should be alleged in the complaint, and, of con-
sequence, that the court erred in overruling the grounds
of the demurrer which present the point. In all other
respects the demurrer to the information is without
merit.

Section 3 of the charter of said town (Acts 1898-99,
p. 1194) provides, among other things, that "the mayor
and councilmen shall determine the legality of elections
and declare who are the legally elected officers, and in
case of a tie shall determine who are mayor and alder-
men." The effect of this is to create the mayor and
councilmen a board of supervisors, to determine the re-
sult of the election, and to declare who are elected to the
several offices. "But the declaration of this board does
not necessarily determine the fact permanently, or be-
yond revision, but for the time being to confer on those
who are declared elected a prima facie right to hold the
office until a different result may be reached in a proper
proceeding to contest the title to the office of the person
declared by the board entitled to it. As against any in-
truder in the office, and in fact as against all the world
except a de facto officer in possession of the office under
color of authority, the fact is settled by the determina-
tion of the board until in a proper proceeding that de-
termination is reversed."—McCrary on Elections, §§

204-221; Merrill on Mandamus, § 142; 2 Dillon on Munic. Corp. (2d Ed.) § 716; *State v. Oaees,* 86 Wis. 634, 57 N. W. 296, 39 Am. St. Rep. 912; *Echols v. State ex rel Dunbar,* 56 Ala. 132. This being so, the declaration of the result of the election by the board cannot be res adjudicata in respect to the right of a party to contest the title of one declared elected to an office. We think it was not intended by the Legislature to confer on the mayor and councilmen jurisdiction to hear and determine cases of contested elections. Therefore it must follow that the demurrer to pleas A and B, which attempt to set up the doctrine of res adjudicata, was properly sustained.—*Echols v. State ex rel. Dunbar, supra.*

There is no provision by statute for contesting the election of mayor of the town of Elba. Consequently such election may be contested by a proceeding in the nature of quo warranto.—*Echols v. State ex rel. Dunbar, supra; Parks v. State,* 100 Ala. 634, 13 South. 756.

The court properly granted relator's motion to strike the portion of paragraph 4 of the answer of respondent which is set out in the motion. The matter presented was frivolous, and was also irrelevant to any issue involved in the cause.

Pleas C, 1, 2, 3, and 4, raise the question of the constitutionality of a local act of the Legislature extending the territorial boundaries of the town of Elba.—Loc. Acts 1903, p. 160. The title of this act is "An act to extend the corporate limits of the town of Elba." Section 1 of the act provides for an extension of the territory of the town, and defines the boundaries of the territory taken in by the extension. Section 2 is in this language: "Provided, that this act shall not require the municipal corporation of the town of Elba to keep in repair such county bridges as are now located within the territory above described, or which may hereafter be erected by

the county of Coffee, or provide bridges across the streams in said territory." There are two points in the attack made on the act: First, that notice containing the substance of the law was not published, as required by section 106 of the Constitution of 1901, prior to the introduction of the bill; second, that the law contains two subjects, one of which is not expressed in the title, in violation of section 45 of the Constitution of 1901.

In respect to the latter objection, the rule, as stated by this court, is that "the title of a bill may be very general, and need not specify every clause of the statute, it being sufficient if they are all referable and cognate to the subject expressed; but, if clauses are contained in the act which are not so correlated to the subject expressed in the title as to appear to follow as a natural and legitimate complement, they cannot stand."—*Ballentyne v. Wickersham*, 75 Ala. 533; *Bradley's Case*, 99 Ala. 177, 13 South. 415; *Bell's Case*, 115 Ala. 87, 22 South. 453. Again it is said the test is: Is there anything in the bill which cannot by fair construction be referred to the title? Or (as stated in another form by this court): "The question must be whether, taking from the title the subject, we can find anything in the bill which cannot be referred to that subject. If we do, the law embraces a subject not described in the title."—*Ex parte Pollard*, 40 Ala. 77; *State v. Sayre*, 118 Ala. 1, 24 South. 89; *Alabama, etc., R. R. Co. v. Reed*, 124 Ala. 253, 27 South. 19, 82 Am. St. Rep. 166. Applying these principles to the act in judgment we are clear in our conclusion that the subject-matter of section 2 is not expressed in or implied by the title.—that it is not so correlated to the subject expressed in the title as to appear to follow as a natural and legitimate complement thereto. Therefore the act, so far as section 2 is concerned, is void.—Authorities supra; *Thompson v. Town*

of *Luverne,* 125 Ala. 366, 29 South. 326; *Randolph v. Painters Co.,* 106 Ala. 501, 17 South. 721; *Ex parte Gayles,* 108 Ala. 514, 19 South. 12.

But it is insisted by the relator that, if section 2 is inoperative, it may be expunged and leave a perfect enactment. When two subjects are expressed in the title of a bill, and the body embraces both, the whole act will be treated as void.—*Builders' Co. v. Lucas & Co.,* 119 Ala. 202, 24 South. 416; *Ballentyne v. Wickersham,* 75 Ala. 533. But when only one subject is expressed in the title, and the body of the act contains matter not within the purview of the title, if such matter is distinct and separable from that expressed in the title, and the two are not dependent the one on the other, the courts will permit the one part to stand, though the other may be expunged as unconstitutional, provided effect can be given to the legislative intent.—Cooley's Const. Lim. pp. 176, 181; *Bradley's Case,* 99 Ala. 177, 13 South. 415; *Lowndes County v. Hunter,* 49 Ala. 507; *Powell's Case,* 69 Ala. 10.

Having determined that section 2 of the act is not within the purview of the title, we entertain no doubt that it is separable from the subject expressed in the title. That the title and section 1 of the act constitute a complete and perfect enactment cannot be a subject of doubt; and we cannot say that the Legislature, without section 2, would not have passed the act. The primary, controlling purpose of the Legislature in the enactment of the law, it seems to us, was that expressed in the title—the extension of the territorial limits of the town. We are not impressed with the argument that section 2 of the act was intended as a compensation for the bringing in of the new territory. It seems to us to be without application here. On the considerations adverted to, we hold that, exclusive of section 2, the stat·

ute may stand as a valid enactment.   This conclusion disposes of the first point of attack made on the law.

It being conceded that the substance of the act, exclusive of section 2, was published before the introduction of the bill, as required by section 106 of the Constitution of 1901, and section 2 being now here expunged, it follows that the failure to include the substance of section 2, which was added to the bill after its introduction,. does not affect the validity of the law.

The objection to the question propounded to witness Warren by the respondent was properly sustained.   The testimony called for was patently illegal and incompetent.—Sections 186, 187, Const.; sections 15, 16, Election Law (Gen. Acts 1903, pp. 446, 447) 10 Am. & Eng. Ency. Law, 840.

The ballots and poll lists were in evidence, and showed that W. C. Wood voted for the relator; so that, even if it should be. conceded that the question propounded to witness Will Bryant by respondent was a proper one, it affirmatively appears that no injury resulted to him by the court's sustaining the objection to the question. The same observations apply in respect to the ruling of the court on the questions propounded to another witness, calling for evidence as to whom Hutchinson, Deal, Flowers, and Boutwell, voted for.

The evidence tended to show that witness Will Bryant voted illegally; but he did not claim the personal privilege of refusing to answer the question propounded to him by the relator, and on the authority of *Black v. Pate,* 130 Ala. 514, 528, 30 South. 434, we hold that the court committed no error in overruling the objection to the question.

Will Bryant had testified as a witness before the jury. They saw him, and were as capable of drawing inferences as to his age (based on his appearance) as was the

C 42

witness Page. The court erred in allowing the witness to testify that Bryant "looked to be 40 or 45 years old." —*Martin's Case,* 90 Ala. 602, 610, 8 South. 858, 24 Am. St. Rep. 844.

The mere fact that witness Page voted against the respondent in the election for mayor would not show that he was interested in this proceeding; and the court properly sustained the objection of the relator to the question calling for such evidence.—*Carpenter's Case,* 98 Ala. 31, 13 South. 534.

Unsuccessful efforts made by persons desiring to be registered to have the registrars meet on Friday and Saturday before the Monday on which the election was to be held were immaterial to the issues in the cause, and the court committed no error in disallowing proof of the same.

Assuming that the declarations of Ab Lee as to his residence, made to witness Garrett, would be competent testimony, yet, in the absence of proof that his father did not reside in the town of Elba, his declaration that he could not get his breakfast at his father's earlier did not tend to prove him a nonresident of the town, and the court committed reversible error in refusing respondent's motion to exclude such declaration.

The fact that a bad state of feeling may have existed between witness Lightner and Ab Lee, who was neither a party to nor a witness in the proceeding, was not competent testimony, and the court committed no error in not allowing proof of such feeling.

The declarations of witnesses Wise, Spurlin, Blocker, Brooks, and Claud Lee as to Elba being their home were not proper evidence to prove their residence; and the court properly sustained relator's objection to such evidence.—*Bradford v. Haggerthy,* 11 Ala. 698; *Griffin v. Wall,* 32 Ala. 149.

The isolated fact that Claud Lee had relatives in Elba, and the further fact that his father and mother resided

near Elba, were not competent to show that he resided in that town; and there was no error in the ruling of the court disallowing proof of these facts.

The court takes judicial knowledge of historical facts (16 Cyc. 864, 865), and therefore of the fact that the battle of Atlanta, fought in the war between the states, occurred on the 20th of July, 1864; and even if it was error to allow the date of the occurrence of that battle to be proved by a witness who as a soldier, was engaged in the battle, his testimony corresponding with the true date, no injury could possibly have resulted from the court's allowing such evidence to be given.—17 Am. & Eng. Ency. Law, 902 (2), and authorities cited in notes 3 and 4 to the text; *Cook's Case,* 110 Ala. 40, 47, 20 South. 360.

Section 2 of the act incorporating the town of Elba (Loc. Acts 1898-99, p. 1194), provides that the mayor and councilmen shall be elected by the qualified voters of the town. Section 21 of the same act provides "that no elector shall be permitted to vote at any election in said town until he shall have been a resident citizen of the state of Alabama for 12 months and of said town for 3 months." These are the only provisions in the charter that refer to voters or electors. Sections 106 of the election law of the state, approved October 9, 1903 (Gen. Acts, p. 479), is in this language: "All the provisions of this act shall apply to all primary elections by counties or municipalities held in this state, except in cases where the provisions hereof are inconsistent or in conflict with the provisions of a law governing especially primary, county or municipal elections."

It will be observed that the charter of the town of Elba does not purport to fix the qualifications of au elector, except in respect to the time of residence in the state and town. Therefore the provisions of the general law requiring the payment of poll tax and registration are applicable in determining who are qualified electors

of the town of Elba.—Const. § 184; 1 Dillon on Munic. Corp. (2d Ed.) § 54. That provision, in section 6 of the general election law, which requires the registrars to meet on Friday and Saturday next preceding the day of each general or municipal election, applies only to municipal elections held under the "general municipal laws of the state." The election in this case having been held under the power given in the charter, there was no authority to the registrars to open the books for registration of voters; and, of consequence, those persons who were registered on those days, and on Monday, the day of the election, were not legally registered. It follows that the first part of the oral charge of the court excepted to is free from error.—Const. 1901, § 184.

If there is any infirmity in that part of the oral charge which relates to E. D. Tucker's qualifications, it is found in the fact that the court left a question of law to the jury in respect to the liability for poll taxes. The court should have stated what the law requires in respect to such liability, and then should have left it to the jury to determine the facts in connection with such statement of the law.

The court having determined that the act extending the territorial limits of the town was constitutional, there no longer remained any controversy in the case as to the relator's qualifications or eligibility for the office of mayor. Therefore the court properly assumed the fact of eligibility.—*Miller's Case,* 107 Ala. 40, 19 South. 37. This assumption of the relator's eligibility seems to be the main point in the criticism of the last part of the charge of the court. We see no reversible error in the mode suggested by the court to the jury to be adopted in arriving at the verdict.

For the errors pointed out, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

Tyson, C. J., and Haralson and Simpson, JJ., concur.